**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED MAY 24, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                 No. 142698

JAMES HENRY BUIE,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to consider whether witness testimony taken by two-way, interactive video was properly admitted during defendant's trial. Our consideration implicates two issues: (1) whether defendant's constitutional right to be confronted with the witnesses against him was violated by the admission of video testimony, US Const, Am VI; Const 1963, art 1, § 20, and (2) whether the admission of video testimony violated MCR 6.006(C). Because we conclude that defendant waived his right of confrontation under the United States and Michigan Constitutions and that the court rule

was not violated, we reverse the Court of Appeals' judgment and remand to that Court for consideration of defendant's remaining issues.

## I. FACTS AND HISTORY

Defendant was convicted of sexually assaulting BS and two female minors: LS, age 13, and DS, age 9. The assaults occurred on June 27, 2001, after BS, seeking to trade sex for cocaine, invited defendant into the apartment where she was babysitting LS and DS. In lieu of the desired bargain, defendant held BS at gunpoint and raped her, LS, and DS. LS and DS were unable to identify the man who assaulted them, but at trial BS identified defendant as the perpetrator of the crimes.

Within hours of the assault, Dr. Vincent Palusci examined LS and DS. He found evidence "'indicative of sexual conduct of direct trauma to the genitals, and in the case of [LS], also her anus, which were not explainable in any other manner than the histories provided'" by the children. *People v Buie*, 285 Mich App 401, 404; 775 NW2d 817 (2009) (*Buie I*). Palusci collected vaginal and rectal swabs during the examinations and placed the swabs into rape kits. The kits were then sealed and released to the appropriate law enforcement agencies. An employee of the Michigan State Police's Forensic Biology Unit, Rodney Wolfarth, conducted DNA testing on the swabs and on other objects found at the scene of the crime. Wolfarth found sperm cells in the swabs and designated their originator "Donor 1."

Wolfarth was unable to identify Donor 1 at the time but entered his results into a DNA database known as CODIS, an acronym for "Combined DNA Indexing System." On February 1, 2005, CODIS matched defendant's DNA to Donor 1, and he was arrested and charged with the crimes. Before trial, defense counsel consented to the use of video

2

testimony by Palusci and Wolfarth, and at trial, they were permitted to testify by this method. *People v Buie (After Remand)*, 291 Mich App 259, 267; 804 NW2d 790 (2011) (*Buie II*). However, immediately before Palusci testified, defense counsel stated that defendant "'wanted to question the veracity of these proceedings, so I'll leave that to the Court's discretion.'" *Id*.

After a brief discussion between the court and the information technology staff concerning how the video equipment would operate, Palusci testified. Defendant was eventually convicted by a jury of two counts of first-degree criminal sexual conduct (CSC) involving a victim under the age of 13, MCL 750.520b(1)(a); three counts of first-degree CSC involving the use of a weapon, MCL 750.520b(1)(e); and possession of a firearm during the commission of a felony, MCL 750.227b. Defendant appealed, arguing that the video testimony violated his constitutional right of confrontation and was not properly admitted under any statute or court rule.

The Court of Appeals adopted the test articulated in *Maryland v Craig*, 497 US 836; 110 S Ct 3157; 111 L Ed 2d 666 (1990), to determine whether the admission of the video testimony had violated defendant's right of confrontation. *Buie I*, 285 Mich App at 415. Pursuant to that test, the Court of Appeals then remanded the case to the trial court and ordered it to assess whether permitting the video testimony had been "necessary to further an important public policy or state interest." *Id.* at 418. The prosecutor appealed here, and defendant cross-appealed. This Court denied both applications for leave to appeal but instructed the trial court to "make [additional] findings regarding good cause and consent pursuant to MCR 6.006(C)." *People v Buie*, 485 Mich 1105, 1106 (2010). Dissenting in part from the order, Justice CORRIGAN explained:

3

In light of defense counsel's complete statement, I cannot conclude that "the nature" of that statement manifested anything other than consent. As a threshold matter, the complete statement of defense counsel is "consent" under the Court of Appeals own analysis of the dictionary definition of the term. When defense counsel stated "I'll leave that to the Court's discretion," defendant essentially acquiesced to the taking of testimony using two-way interactive video technology. Defense counsel cannot acquiesce to the court's handling of a matter at trial, only to later raise the issue as an error on appeal. A contrary result would run afoul of the well-established legal principle that a defendant must "raise objections at a time when the trial court has an opportunity to correct the error" and cannot "harbor error as an appellate parachute." [*Id.* at 1107 (citations omitted).]

On remand, the trial court held an evidentiary hearing. At that hearing, the prosecutor was asked:

> *Q*. Now, do you recall specifically any conversation you may have had with defense counsel or the Court concerning the use of the video technology from these witnesses from remote locations?
>
> *A*. I don't recall specifically what was said between [defense counsel] and myself. I do know, you know, thinking about that, that regarding Dr. Palusci's testimony, that I don't believe she objected to it being the video feed because she wanted--she knew the testimony--
>
> * * *
>
> I don't remember [defense counsel's] exact words, but she had indicated that Dr. Palusci--she believed Dr. Palusci's testimony was going to be damaging, so she wanted him, whether it be live or on the screen, done with as quickly as possible.

Defense counsel agreed that she had discussed the use of video testimony before trial. When asked whether she was "agreeable" to the use of video testimony by Palusci and Wolfarth, defense counsel explained:

> Understanding that [the witnesses were not local] and the nature of this particular case and the fact that it had been dragging out for quite a

4

while by this time, I felt--I was in agreement that this would be the best way to have [Palusci and Wolfarth] testify without subjecting them to being here physically.

When asked whether there was "a benefit to having the testimony by video rather than having testimony live," defense counsel responded:

> I didn't think there was any problem. I wouldn't call it a benefit or a burden. It was just two individuals testifying on a tele--on a big screen rather than sitting here. They were sworn as I was this afternoon. They were asked questions by the prosecution. They were cross-examined by me. There was some redirection. I believe I even re-crossed on at least one of the witnesses. And it was done.

Although defense counsel stated that "every conversation [she] had with [defendant] throughout [her] representation was done either in the lock-up area here at the--at the courthouse or with him sitting at the defense table," when asked whether she would have "discussed with [defendant] this--the testimony--the video procedures beforehand," she answered that "[d]espite [defendant's] contentiousness, [she] discussed everything with him" and that "[defendant] was well aware of the prosecutor's desire to have [the witnesses] testify via video."

Defense counsel was then asked whether defendant himself had responded when informed that Palusci and Wolfarth would testify by video. She answered:

> Oh, yeah, of course. [Defendant] objected to everything. It was--you know, it was classic Buie from beginning to end, "This is wrong. That is wrong." But, you know, yeah. And I believe I made a statement on the record indicating [defendant's] disdain for the two individuals testifying via video.

She was then asked:

> *Q.* Okay. And where you said, "I understand this is this particular courtroom's first attempt at this type of technological proceeding and my

5

client is wanting to question the veracity of these proceedings, so I'll leave that to the Court's discretion," is it fair to say then that that statement is you expressing [defendant's] objection to the procedure?

> *A.* Absolutely.

However, when questioned further about that statement, defense counsel explained:

> *A.* [Defendant] was questioning the veracity of everything. It was just--it was a blanket James Buie, this is a farce, and that was pretty much his attitude from beginning to end.
>
> *Q.* Okay. Was that specifically as regarding the use of the video testimony itself, or was this about everything?
>
> *A.* I didn't take it as that. I took it as he had a problem with every piece of this case, every--from beginning to end up until the point that he was too cowardly to come into the courtroom at sentencing. So, no, I didn't take it as specifically he had a problem with the--the--I mean I can't get into his mind, but this was what I was dealing with from the--from the beginning to the end of this case, so I didn't specifically take it as he had a problem with the videotape. It's just he had a problem with the fact that he was on trial for raping two little girls.

At this point, the trial court had defense counsel read this Court's order, *Buie*, 485 Mich 1105, explaining that the court would be asking defense counsel to address a conclusion reached in Justice CORRIGAN's separate statement "so that as clearly as possible, there be no question about what [defense counsel] intended or--or what happened." After defense counsel had done so, the court asked defense counsel:

> *Q.* According to Justice Corrigan, you never objected to the use of a two-way, interactive video technology for taking Dr. Palusci and Dr. Wolfarth's testimony. Is that true or false?
>
> *A.* I never--I never objected.
>
> *Q.* So the statement of Justice Corrigan is true?
>
> *A.* It is.

6

Defendant also testified at the evidentiary hearing. He explained that he and defense counsel did not get along and that he had requested a new attorney. He further claimed that he had no knowledge of the video testimony until it was about to happen. With regard to the video testimony, defendant explained:

> *A.* I told [defense counsel] that I just didn't--it just didn't feel right. I said, "Shouldn't they be in the witness chair?"
>
> *Q.* And what did [defense counsel] do after you told her that?
>
> *A.* No, I told her--I told her I didn't feel right about it, they should be in the witness chair, and she said, "Everything is going to be all right." I said, "Well, I want you to get up and object to it because it just don't seem right."
>
> *Q.* Okay. And did she get up and say something?
>
> *A.* Yes.
>
> *Q.* And what did she say?
>
> *A.* She didn't say the word object like I told her. She--
>
> *Q.* But this statement that we've read at this hearing today about questioning the veracity of the proceedings, is that when she made that statement?
>
> *A.* Yes.

Following this hearing, the trial court issued a written opinion and order holding that there was no error in permitting the video testimony. After hearing the witnesses' testimony and evaluating their demeanor and credibility, the court found that "Defendant consented to the taking of testimony by video when his counsel stated on the record that Defendant wanted to question of the veracity [of the] proceedings but left it to [the] trial

7

court's discretion whether to proceed" and "according to [defense counsel], Defendant did not object to the video testimony. His intent was to object to the proceedings in general because he disliked being prosecuted." Because the Court of Appeals had retained jurisdiction, this case then returned to it. With the benefit of the supplemental record, the Court of Appeals concluded that (1) contrary to the trial court's factual findings, defendant had objected to the video procedure, (2) the testimony had violated both the Confrontation Clause and MCR 6.006(C), and (3) the resultant error amounted to plain error. *Buie II*, 291 Mich App at 274-276. Accordingly, it reversed the trial court and vacated defendant's convictions and sentences. The prosecutor appealed, and we granted leave. *People v Buie*, 489 Mich 938 (2011).

## II. STANDARD OF REVIEW

We review the trial court's factual findings for clear error. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). We review de novo questions of constitutional law and issues of statutory interpretation, *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006), and we interpret court rules using the "same principles that govern the interpretation of statutes," *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

## III. ANALYSIS

At issue in this case is how the waiver of the rights allowed defendants under the Confrontation Clauses of our state and federal constitutions is to be effected and whether the use of video testimony satisfied the requirements of MCR 6.006(C).

8

## A. CONFRONTATION CLAUSE

The Confrontation Clauses of our state and federal constitutions provide that in all criminal prosecutions, the accused has the right to be confronted with the witnesses against him.  US Const, Am VI; Const 1963, art 1, § 20.  The United States Supreme Court has held "that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," *Coy v Iowa*, 487 US 1012, 1016; 108 S Ct 2798; 101 L Ed 2d 857 (1988), but has also held that "the face-to-face confrontation requirement is not absolute," *Craig*, 497 US at 850.  In *Craig*, the Court articulated a two-part test for dispensing with face-to-face confrontation: first, the denial of such confrontation must be "necessary to further an important public policy" or state interest and, second, denial is permitted "only where the reliability of the testimony is otherwise assured."  *Id*. at 850, 852.  Whether the second prong has been satisfied is assessed by three indicators: (1) the taking of an oath, (2) the availability of cross-examination, and (3) the observation of the witness by the jury.  *Id*. at 845-846, 851, citing *California v Green*, 399 US 149, 158; 90 S Ct 1930; 26 L Ed 2d 489 (1970).

## B. GENERAL WAIVER PRINCIPLES

"Waiver is the 'intentional relinquishment or abandonment of a known right.'" *People v Carines*, 460 Mich 750, 762-763 n 7; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted).  The United States Supreme Court explained in *Olano*:

> Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.  See,

9

*e.g.*, 2 W. LaFave & J. Israel, Criminal Procedure § 11.6 (1984) (allocation of authority between defendant and counsel); Dix, Waiver in Criminal Procedure: A Brief for More Careful Analysis, 55 Texas L. Rev. 193 (1977) (waivability and standards for waiver).  [*Olano*, 507 US at 733.]

This Court has recognized that "[w]hile the defendant must personally make an informed waiver for certain fundamental rights such as the right to counsel or the right to plead not guilty, for other rights, waiver may be effected by action of counsel." *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000).  In *New York v Hill*, 528 US 110, 114-115; 120 S Ct 659; 145 L Ed 2d 560 (2000), the United States Supreme Court explained at greater length:

> "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." *Taylor* v. *Illinois*, 484 U.S. 400, 417-418 [108 S Ct 646; 98 L Ed 2d 798] (1988).  As to many decisions pertaining to the conduct of the trial, the defendant is "deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link* v. *Wabash R. Co.*, 370 U.S. 626, 634 [82 S Ct 1386; 8 L Ed 2d 734] (1962) (quoting *Smith* v. *Ayer*, 101 U.S. 320, 326 [25 L Ed 955] (1880)).  Thus, decisions by counsel are generally given effect as to what arguments to pursue, see *Jones* v. *Barnes*, 463 U.S. 745, 751 [103 S Ct 3308; 77 L Ed 2d 987] (1983), what evidentiary objections to raise, see *Henry* v. *Mississippi*, 379 U.S. 443, 451 [85 S Ct 564; 13 L Ed 2d 408] (1965), and what agreements to conclude regarding the admission of evidence, see *United States* v. *McGill*, 11 F. 3d 223, 226-227 (CA1 1993).  Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.

Additionally, we asserted in *Carter*, 462 Mich at 215:

> "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *United States v Griffin*, 84 F3d 912, 924 (CA 7, 1996), citing *Olano*, [507 US] at 733-734.

10

## C. CONFRONTATION CLAUSE WAIVER

There is no doubt that the right of confrontation may be waived and that waiver may be accomplished by counsel. This fact was recently reaffirmed in *Melendez-Diaz v Massachusetts*, 557 US 305, ___ n 3; 129 S Ct 2527, 2534 n 3; 174 L Ed 2d 314 (2009) (stating that "[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence"), but was also recognized a century ago in *Diaz v United States*, 223 US 442; 32 S Ct 250; 56 L Ed 500 (1912).[1] In *Diaz*, a defendant was convicted of homicide, in part on the basis of testimony from an earlier trial[2] that had been introduced by defense counsel. *Diaz*, 223 US at 449, 444. The Court considered whether *counsel's* introduction of the prior record waived the *defendant's* right of confrontation and explained that a defendant is "free to assert [his right of confrontation] or to waive it, as to him may seem advantageous." *Id*. at 450. The Court concluded that because "the accused, by his voluntary act, placed in evidence the testimony disclosed by the record in question, and thereby sought to obtain an advantage from it, he waived his right of confrontation . . . ." *Id*. at 452-453. Thus, the Court made clear that defense counsel may waive the right of confrontation on a defendant's behalf.

---

[1] *Diaz* involved crimes committed in the Philippine Islands while the United States was its sovereign. Thus, the right of confrontation at issue arose under the Philippine Civil Government Act, which provided defendants the right "'to meet the witnesses face to face.'" *Diaz*, 223 US at 449. However, the Supreme Court decided the relevant issue by considering "cases relating to the *like right secured by the constitutions of the several States and the Constitution of the United States*." *Id*. at 450-451 (emphasis added).

[2] That earlier trial involved an assault and battery that caused injuries to which the victim had succumbed by the time of the conviction at issue in *Diaz*.

Among the cases cited in support of this conclusion, our decision in *People v Murray*, 52 Mich 288; 17 NW 843 (1883), was given particular emphasis. *Diaz*, 223 US at 451-452. In *Murray*, defense counsel at trial stipulated the admission of witness depositions. After the defendant was convicted of murder, the defendant argued on appeal that these stipulations had violated his right of confrontation. Justice COOLEY responded for the Court:

> A chief ground of error relied upon is that the prosecution was allowed to put in evidence certain depositions taken out of court of witnesses not present at the trial. The facts seem to be that the attorneys for the respective parties stipulated to put in certain depositions on both sides, and they were put in accordingly. This, it is said, was in violation of the respondent's constitutional right to be confronted with his witnesses. But the court made no ruling in the matter; what was done was voluntarily done by the parties; the defendant had the benefit of the stipulation, and, for aught we can know, it may have been made chiefly in his interest. But however that may be, when the court has made no ruling we can have nothing to review. This Court cannot relieve a party from a criminal conviction because of his own voluntary action on the trial.

> It is said the counsel for respondent was counsel assigned to him by the court and may not have been counsel of his choice. We do not know how the fact was, but we know it is customary to allow the respondent to choose for himself. But however that may be, the counsel acted for the respondent without objection, and without complaint that he did not do the best he could for him.

> The defendant undoubtedly had a constitutional right to be confronted with his witnesses. He waived that right in this case, apparently for his own supposed advantage and to obtain evidence on his own behalf. It would have been a mere impertinence for the court to have interfered and precluded this stipulation being acted upon. But it would have been more than an impertinence; it would have been gross error. And it would be palpable usurpation of power for us now to set aside a judgment for a neglect of the court not at the time complained of, but in respect to something where any other course would have been plain error.

Under the view taken by the respondent it would seem that when the evidence had been obtained under his stipulation, the court was put in position where it was impossible to avoid error; for if the evidence was received, he might complain, as he does now, that his constitutional right was violated, and if the court refused to receive it when he was consenting, the respondent would be entitled to have the conviction set aside for that error.

I shall always be ready to preserve in its integrity every constitutional right; but I do not understand that the Constitution is an instrument to play fast and loose with in criminal cases any more than in any other, or that it is the business of courts to be astute in the discovery of technical difficulties in the punishment of parties for their criminal conduct. [*Murray*, 52 Mich at 290-291.]

For more than a century *Murray* has stood for two propositions in this state: (1) the right

of confrontation may be waived[3] and (2) that waiver may be effected by counsel.[4]

---

[3] See, e.g., *People v Miller*, 121 Mich App 691, 702 n 6; 329 NW2d 460 (1982), citing *Murray*, 52 Mich 288 ("Among the rights which an accused may waive are: right to confront witnesses . . . ."). In *United States v Aptt*, 354 F3d 1269 (CA 10, 2004), the court stated:

A defendant is free to waive objections to evidence by stipulation, perhaps "to obtain evidence on his own behalf" or in return for other concessions from the prosecution. *Diaz*, [223 US at 451] (quoting [*Murray*, 52 Mich at 290]). In such contexts, admitting the stipulated evidence is so far from being error that it would be an "impertinence" and "gross error" for a court to interfere with the stipulation. [*Diaz*, 223 US] at 452.

See also *Belt v United States*, 4 App DC 25, 31 (1894) (citing *Murray* for the same proposition).

[4] See, e.g., *People v Baker*, 7 Mich App 7, 11; 151 NW2d 217 (1967):

Defense counsel, after the prosecutor made this statement here complained of, corroborated the prosecutor's statement by replying: 'That's correct.' Defense counsel is an able and experienced practitioner who has tried many cases in the criminal courts in this jurisdiction. He was undoubtedly aware that his client had a constitutional right to be confronted

Michigan has not been alone in accepting these propositions. See part III(D) of this opinion.

### D. CONFRONTATION CLAUSE WAIVER BY COUNSEL

The majority of courts that have addressed this issue have concluded that the right of confrontation may be waived, and that the waiver may be effected by counsel, as long as counsel's decision constitutes reasonable trial strategy and the defendant does not object to the waiver.[5] Indeed, these concerns were also present in *Murray.* Regarding

---

with the witnesses. There is no reversible error present in this second issue. Cf. [*Murray*] 52 Mich 288.

See also *People v Garcia*, 51 Mich App 109, 114-115; 214 NW2d 544 (1974):

> [S]ince the statute limiting the use of testimony taken at a former hearing is designed to protect defendant's right to confrontation, and this right may be waived, [*Murray*, 52 Mich 288], it inexorably follows that the stipulation by defendant's counsel to allow the trial judge to read the transcript could constitute a conscious choice of trial strategy on the part of defendant's attorney . . . .

[5] Regarding federal courts, see, e.g., *Janosky v St Amand*, 594 F3d 39, 48 (CA 1, 2010), citing *Cruzado v Puerto Rico*, 210 F2d 789, 791 (CA 1, 1954); *United States v Plitman*, 194 F3d 59, 63 (CA 2, 1999); *United States v Stephens*, 609 F2d 230, 232-233 (CA 5, 1980); *United States v Reveles*, 190 F3d 678, 683 n 6 (CA 5, 1999); *United States v Joseph*, 333 F2d 1012, 1013 (CA 6, 1964); *United States v Cooper*, 243 F3d 411, 418 (CA 7, 2001) ("The majority of circuits that have addressed this question have held or stated that a defendant's attorney can waive his client's . . . confrontation right 'so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.'"); *United States v Robinson*, 617 F3d 984, 989-990 (CA 8, 2010); *United States v Gamba*, 541 F3d 895, 900-901 (CA 9, 2008), citing *Wilson v Gray*, 345 F2d 282, 287-288 (CA 9, 1965); and *Hawkins v Hannigan*, 185 F3d 1146, 1155-1156 (CA 10, 1999).

Regarding state courts, see, e.g., *People v Campbell*, 208 Ill 2d 203, 217; 802 NE2d 1205 (2005) (adopting the majority view that "counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to

trial strategy, it was implicit in *Murray* that counsel's waiver would have been in the defendant's interest.[6] That aim is presumed, as shown by the Court's comment that "for aught we can know, it may have been made chiefly in his interest." *Murray*, 52 Mich at 290. This presumption is in line with recent caselaw. "[A] defendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000), citing *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997); see also *People v Carbin*, 463 Mich 590, 601; 623 NW2d 884 (2001). It is also in line with *Hill*'s explanation that "decisions by counsel are generally given effect as to . . . what evidentiary objections to raise . . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." *Hill*, 528 US at 115.

It is also implicit in *Murray* that any objection a defendant may have must be made on the record. This is supported by Justice COOLEY's statement that "when the court has made no ruling we can have nothing to review," *Murray*, 52 Mich at 290, which suggests that a defendant must object in such a way that the trial court must respond with

---

stipulate is a matter of trial tactics and strategy"); *Lee v State*, 266 Ark 870, 876-877; 587 SW2d 78 (Ark App, 1979); *State v Oyama*, 64 Hawaii 187, 188; 637 P2d 778 (1981); *Waldon v State*, 749 So 2d 262, 266 (Miss App, 1999); *State v Bromwich*, 213 Neb 827, 830; 331 NW2d 537 (Neb, 1983); *Ludlow v State*, 761 P2d 1293, 1295 (Okla Crim App, 1988); *State v Harper*, 33 Wash App 507, 510; 655 P2d 1199 (1982); *Bilokur v Commonwealth*, 221 Va 467, 473; 270 SE2d 747 (1980).

[6] *Murray*, 52 Mich at 290 (noting that the defendant "waived that right in this case, *apparently for his own supposed advantage and to obtain evidence on his own behalf*") (emphasis added).

15

a ruling. As *Murray* stated, it is not "the business of courts to be astute in the discovery of technical difficulty," and in fact "it would be palpable usurpation of power for us now to set aside a judgment for a neglect of the court *not at the time complained of . . . .*" *Id.* at 290-291 (emphasis added). Rather, those difficulties must be brought to the court's attention by the parties. Again, as Justice CORRIGAN articulated:

> Defense counsel cannot acquiesce to the court's handling of a matter at trial, only to later raise the issue as an error on appeal. A contrary result would run afoul of the well-established legal principle that a defendant must "raise objections at a time when the trial court has an opportunity to correct the error" [*People v Grant*, 445 Mich 535, 551; 520 NW2d 124 (1994)] and cannot "harbor error as an appellate parachute." [*People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000).] [*Buie*, 485 Mich at 1107 (CORRIGAN, J., concurring in part and dissenting in part) (citation omitted).]

Other courts have indicated that objections must be made on the record. For instance, they have found waiver where the defendant failed to "manifest" dissent,[7] where there was no "evidence" that the defendant disagreed with counsel's objection,[8] and where the defendant "indicated" no dissent.[9] In addition, courts have held that "[w]here the

---

[7] See *Cruzado*, 210 F2d at 791 ("When an accused is represented by counsel, it is generally to be assumed that counsel adapts his trial tactics to what in his judgment is for the best interests of the accused. If the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel.").

[8] See *Hawkins*, 185 F3d at 1155-1156 (holding that defense counsel effectively waived the defendant's right of confrontation where counsel's decision to stipulate to testimony was a matter of prudent trial strategy and "there [wa]s no evidence that [the defendant] disagreed with or objected to his counsel's decision").

[9] See *Joseph*, 333 F2d at 1013 (holding that the right to confrontation "may be effectively waived by counsel in open court in the presence of an accused who indicates no dissent").

16

defendant is 'aware of the stipulation . . . [and does] not object to the stipulation in court,' we presume that he has acquiesced in his counsel's stipulation." *United States v Robinson*, 617 F3d 984, 989-990 (CA 8, 2010), citing *United States v Lee*, 374 F3d 637, 650 (CA 8, 2006).

Further, *Murray* itself underscored the practical concern that allowing a defendant to object to defense counsel's consent off the record provides a defendant with "an appellate parachute." Under such a rule, a defendant might acquiesce in or even expressly agree with defense counsel's waiver outside of court and then claim to have objected behind closed doors, or even in his own mind, when he does not enjoy the outcome he desires. In light of the obvious impracticalities of such a rule, we reaffirm the rule applied in *Murray*, and consonant with the rule applied in a majority of state and federal courts, that where the decision constitutes reasonable trial strategy, which is presumed, the right of confrontation may be waived by defense counsel as long as the defendant does not object on the record.[10]

In reaffirming this rule, we also clarify that the right of confrontation is not a right that must be personally waived by the defendant in Michigan, despite our Court of Appeals' decision in *People v Lawson*, 124 Mich App 371, 376; 335 NW2d 43 (1983), in which the Court asserted:

---

[10] This rule is largely in agreement with the rule articulated by the Court of Appeals below that "defense counsel may only waive a defendant's right of confrontation if the waiver is a legitimate trial tactic or strategy *and* the defendant does not object to the decision." *Buie II*, 291 Mich App at 272.

The res gestae rule in Michigan strengthens the confrontation clause's guarantees. However, it is not as integral a part as cross-examination, the oath, and demeanor. As such, a defense counsel can waive this particular right for a defendant. On the other hand, the more integral rights of the confrontation clause must be personally waived by the defendant. In *Brookhart* [*v Janis*, 384 US 1; 86 S Ct 1245; 16 L Ed 2d 314 (1966)], the Supreme Court reversed the defendant's conviction because the record did not clearly show that the defendant himself (rather than defense counsel) waived his confrontation right to cross-examine the witnesses against him.

*Lawson*'s conclusion that "the more integral rights of the confrontation clause must be personally waived by the defendant" is incompatible with *Murray* and with the widely accepted rule that counsel may waive the right of confrontation. Further, *Lawson* misread *Brookhart*, its primary authority for the personal-waiver requirement. Although *Brookhart* discussed confrontation, the dispositive issue in that case concerned

whether counsel has power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him. [*Brookhart*, 384 US at 7.]

Thus, *Brookhart* merely dealt with waiver of the right to plead not guilty, not waiver of the right of confrontation. Accordingly, *Brookhart* does not stand for the proposition that a defendant must personally waive the right of confrontation.

As the Court of Appeals below correctly indicated, "the personal waiver rule articulated by [*Lawson*] is dictum and is, therefore, not binding." *Buie II*, 291 Mich App at 272. Still, *Lawson* has been cited in a number of other cases, including *Buie I*,[11] as

---

[11] See, e.g., *People v Farquharson*, 274 Mich App 268, 277; 731 NW2d 797 (2007). Several Court of Appeals decisions have also cited *Lawson* for the general proposition that waiver must be made by a defendant, but concluded that "[t]he right of confrontation

well as by defendant,[12] for the proposition that personal waiver of the "integral elements of the Confrontation Clause" is required. *Buie I*, 285 Mich App at 418. For the reasons we have set forth, this is not a correct statement of law, and we take this opportunity to overrule that portion of *Lawson*.

In sum, we adopt the following rule to govern the waiver of the right of confrontation by counsel in Michigan: if the decision constitutes reasonable trial strategy, which is presumed, the right of confrontation may be waived by defense counsel as long as the defendant does not object on the record.[13]

---

is not of such moment that it requires waiver by the defendant personally when he is represented by counsel." *People v Johnson*, 70 Mich App 349, 350; 247 NW2d 310 (1976). See, e.g., *People v Bartley*, unpublished opinion per curiam of the Court of Appeals, issued December 16, 2010 (Docket No. 294149), p 6; *People v Powe*, unpublished opinion per curiam of the Court of Appeals, issued November 17, 2009 (Docket No. 286175), p 3.

[12] Defendant claims that *People v Saffold*, 465 Mich 268, 281; 631 NW2d 320 (2001), requires personal waiver of the right of confrontation because confrontation is among the rights of which a defendant must be advised before a valid guilty plea may be entered. Though it is true that a defendant must be advised of the right of confrontation before pleading guilty, *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972), that does not suggest that the right itself must be personally waived. Rather, the purpose of the articulation of that right in *Jaworski*, not unlike in *Brookhart*, was to ensure that a defendant *knowingly* pleads guilty-- that is, that the defendant is aware of the rights that are waived by pleading guilty.

[13] Although the dissent concedes that "defense counsel failed to communicate a cognizable objection" at trial, it takes issue with our requirement that a defendant's objection must be "on the record." *Post* at 3. The dissent concludes that our opinion "allows a defense attorney to waive a criminal defendant's right of confrontation despite the defendant's unequivocal objection to the attorney" if an attorney "fails to voice a proper objection . . . ." *Post* at 3. However, a counsel's failure to object may result in the waiver of a defendant's rights in many instances. The dissent overlooks that a defendant may seek relief in such instances by establishing that defense counsel rendered

19

## E.  APPLICATION OF WAIVER

Clear error is present when the reviewing court is left with a "definite and firm conviction" that an error occurred.  *Tuttle v Dep't of State Hwys*, 397 Mich 44, 46; 243 NW2d 244 (1976).  Because an objection must be on the record, the focus should be on what transpired at trial and whether the trial court should reasonably have concluded that defense counsel objected to the use of the video technology.  In this case, the trial court implicitly determined that there had been no objection to the video testimony because it never ruled on any such objection.

Immediately before Palusci testified, defense counsel stated:

> I understand this is this particular courtroom's first attempt at this type of technological proceeding, and my client has--wanted to question the veracity of these proceedings, so I'll leave that to the Court's discretion.

A review of the record indicates that this statement did not constitute an objection for several obvious reasons.  First, the statement is not phrased as an objection, and indeed the word "objection" is altogether missing.  Second, as Justice CORRIGAN explained, "When defense counsel stated 'I'll leave that to the Court's discretion,' defendant essentially acquiesced to the taking of testimony using two-way interactive video technology." *Buie*, 485 Mich at 1107 (CORRIGAN, J., concurring in part and dissenting in part).  Third, in the immediate aftermath of counsel's statement, the trial court had a member of its information technology staff explain *how* the video equipment worked,

---

ineffective assistance.  *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

which clearly suggests that the court believed that the statement did not constitute an objection but constituted a request for further information about the operation of the video equipment. Fourth, immediately after the discussion regarding the equipment, Palusci testified without further complaint by counsel. If counsel's statement had been intended as an objection, we would expect that she might have questioned the trial court's response of having the staff explain how the equipment would work, since that response would have been entirely unresponsive to an objection. Fifth, no statement or complaint was made before the video testimony of Wolfarth. The record strongly suggests that the trial court concluded, and did so correctly, that defense counsel's statement had not constituted an objection to the procedures the court adopted. Nevertheless, the Court of Appeals overlooked this record and focused entirely on the evidentiary hearing, reasoning:

> Given the testimony of both defendant and defense counsel at the evidentiary hearing on remand, we cannot conclude that defendant consented to the video procedure through counsel. To the contrary, defendant objected to the use of the technology and had counsel place his objection on the record. Because defendant expressly objected to the use of the technology, defense counsel's agreement with its use does not qualify as a waiver . . . . [*Buie II*, 291 Mich App at 274.][14]

Although the Court of Appeals disagreed with the trial court's factual findings, it failed to articulate how those findings constituted clear error. That is, it did not explain how it was

---

[14] When the Court of Appeals stated earlier in its opinion that "defendant failed to object to the use of the video technology on the grounds he raises on appeal," it was presumably indicating that defendant did not object on the record. *Buie II*, 291 Mich App at 268. If this presumption is correct, it alone is a sufficient basis to reverse the Court of Appeals because a defendant's objection must be on the record, as discussed earlier.

21

left with a "definite and firm conviction" that an error had occurred. *Tuttle*, 397 Mich at 46. We are certainly not left with such a conviction. Therefore, we must defer to the trial court's findings of fact-- specifically, that defendant did not object to the use of the video testimony. That this decision constituted reasonable trial strategy is a presumption that was never addressed, much less rebutted. Indeed, at the evidentiary hearing, defense counsel stated that she did not have any problem with Palusci and Wolfarth testifying by video. Accordingly, the trial court's findings were not clearly erroneous, and we believe that defendant, through his counsel, waived his right of confrontation and "extinguished any error" that may have been committed. *Carter*, 462 Mich at 215.

## F. MCR 6.006(C)

Defendant also challenges the admission of the video testimony on the basis that it occurred in violation of MCR 6.006(C), which governs the use of video and audio technology in judicial proceedings. MCR 6.006(C) provides, in pertinent part:

> Defendant in the Courtroom—Other Proceedings. As long as the defendant is either present in the courtroom or has waived the right to be present, upon a showing of *good cause*, district and circuit courts *may* use two-way interactive video technology to take testimony from a person at another location in the following proceedings:
>
> (1) evidentiary hearings, competency hearings, sentencings, probation revocation proceedings, and proceedings to revoke a sentence that does not entail an adjudication of guilt, such as youthful trainee status;
>
> (2) with the *consent of the parties, trials*. A party who does not consent to the use of two-way interactive video technology to take testimony from a person at trial shall not be required to articulate any reason for not consenting. [Emphasis added.]

22

MCR 6.006(C)(2) only allows video testimony "with the consent of the parties." MCR 6.003(1) defines "party," as it applies in MCR 6.006, to include the "lawyer representing the party." Thus, "parties" in MCR 6.006(C)(2) encompasses both the lawyer and the client, and the lawyer may consent on behalf of his or her client. Still, it does not follow that this consent *overrides* an objection by the defendant because *both* the defendant and defense counsel comprise the "party." Thus, if either the defendant or counsel objects, the "party" cannot be said to have consented. However, as with the Confrontation Clause, for the defendant's objection to be valid, it must be made on the record. Otherwise, the trial court has no way of discerning that an error may have been committed. Accordingly, for the reasons stated in our analysis of Confrontation Clause waiver, we also conclude that defense counsel consented to the use of the video technology and that defendant did not object on the record.

Defendant also argues that the use of "good cause" in MCR 6.006(C) imports the constitutional standard from *Craig* for dispensing with confrontation, to wit, that the "cause" be "necessary to further an important public policy" or "state interest." We reject this argument. The court rule does not refer to *Craig* or its standard. There is a substantive distinction between "good cause" and "necessary to further an important state interest," and we have adopted only the former language. "Good cause" simply means a "satisfactory," "sound or valid" "reason," whereas "necessary" means "essential" or "indispensible." *Random House Webster's College Dictionary* (1997). Moreover, under the court rule there is no need to identify a corresponding state interest; any sound reason is sufficient.

23

Because a trial court "*may* use two-way interactive video technology to take testimony from a person at another location," MCR 6.006(C) (emphasis added), the decision to do so is reviewed for an abuse of discretion. The use of the word "may" makes clear that the decision is "a matter left to the discretion of the trial court," *Warda v Flushing City Council*, 472 Mich 326, 332; 696 NW2d 671 (2005), and discretionary decisions are reviewed for abuse of discretion, see *Detroit Tug & Wrecking Co v Gartner*, 75 Mich 360, 361; 42 NW 968 (1889). An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). In this case, in which both parties apparently consented to the use of video testimony, the trial court did not choose an outcome falling outside the range of principled outcomes by concluding that convenience, cost, and efficiency were sound reasons for using video testimony. That is, the trial court did not abuse its discretion by concluding that good cause for using video testimony was shown. Thus, MCR 6.006(C) was satisfied, and the use of video testimony was proper.

## IV. CONCLUSION

This case presents two issues: (1) whether defendant's constitutional right to be confronted with the witnesses against him was violated by the admission of video testimony and (2) whether the admission of video testimony violated MCR 6.006(C). Because we conclude that defendant waived his right of confrontation under the United States and Michigan Constitutions and that the court rule was not violated, we reverse the

24

Court of Appeals' judgment and remand to that Court for consideration of defendant's remaining issues.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                        No. 142698

JAMES HENRY BUIE,

        Defendant-Appellee.

_____

HATHAWAY, J. (*concurring in the result*).

    I concur in the result only in this factually unique case.

                                      Diane M. Hathaway

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                     No. 142698

JAMES HENRY BUIE,

      Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

I respectfully dissent and would affirm the judgment of the Court of Appeals, which vacated defendant's convictions and remanded for a new trial.

I would hold first that the public policies or state interests that the trial court relied on to justify allowing the two-way, interactive video testimony did not outweigh defendant's right of confrontation, as guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. Pursuant to *Maryland v Craig*, 497 US 836, 850, 852; 110 S Ct 3157; 111 L Ed 2d 666 (1990), a trial court may only employ a procedure that infringes on a defendant's right of confrontation if the court has made an individualized finding that the "denial of such confrontation is necessary to further an important public policy" or "important state interest."[1] On remand, the trial

---

[1] Because both Dr. Vincent Palusci and Rodney Wolfarth took the oath to testify truthfully, were subject to cross-examination, and could be observed by the jury when testifying, I agree that the use of the two-way, interactive video technology in this case implicates only the "physical presence" requirement of the Confrontation Clause. See *Craig*, 497 US at 845-846 (noting that the right of confrontation includes four elements:

court in this case cited cost savings, efficiency, convenience of the witnesses, and avoiding delay as the public policies or state interests justifying the video testimony, yet failed to explain how these interests were important enough to outweigh defendant's right of confrontation. I would hold that cost savings, efficiency, convenience of the witnesses, and avoiding delay are not sufficiently important state interests to justify the abrogation of a defendant's right of confrontation.

In my view, the majority improperly avoids the aforementioned issue under *Craig* by concluding that defendant waived his right of confrontation through his attorney when the attorney stated, "I understand this is this particular courtroom's first attempt at this type of technological proceeding, and my client has--wanted to question the veracity of these proceedings, so I'll leave that to the Court's discretion."[2] Assuming arguendo that defense counsel's statement that she would leave the matter to the discretion of the trial court constituted an attorney's waiver, I disagree with the majority's conclusion that defense counsel's statement effected a valid waiver of defendant's right of confrontation. Rather, I would hold that there can be no effective waiver of that right by an attorney when the record clearly shows that the attorney's purported waiver was in direct contravention of the defendant's express objection. As the majority notes, defense counsel admitted on remand that her statement to the trial court that her client wanted "to question the veracity of these proceedings" was "[a]bsolutely" her expression of

"physical presence, oath, cross-examination, and observation of demeanor by the trier of fact").

[2] In my view, the meaning of this statement is so inscrutable that the trial court should have inquired further to determine whether defendant was objecting.

2

defendant's objection to the use of two-way video testimony. Defense counsel later admitted, however, that she never actually objected. Consistently with defense counsel's testimony, defendant testified on remand that he instructed his attorney to object and that she stood and made the "veracity of the proceedings" statement, but never used the word "object." Thus, it is clear that defendant objected, voiced his objection to his attorney, and instructed her to object, yet defense counsel failed to communicate a cognizable objection despite her client's instruction.

The majority acknowledges that an attorney cannot waive a client's core constitutional right of confrontation over the client's objection. Yet the majority's opinion condones an attorney's decision to make no cognizable objection, even though the attorney is aware that her client wishes to object. By holding that "the right of confrontation may be waived by defense counsel as long as the defendant does not object on the record," *ante* at 19, the majority essentially charges criminal defendants with the legal knowledge and skill of an attorney. Under the majority's new rule, when an attorney fails to voice a proper objection to a procedure that implicates a core constitutional right, the defendant will be required to know the legal basis for the objection, override his attorney, and make the objection on the record himself. It is the attorney's duty to object, not the client's. In my view, the majority opinion allows a defense attorney to waive a criminal defendant's right of confrontation despite the defendant's unequivocal objection to the attorney.

Additionally, while I agree with the majority opinion that the good-cause standard for use of two-way video testimony in MCR 6.006(C) is not synonymous with the *Craig* standard of "necessary to further an important public policy" or "state interest," I do not

agree with the majority that defendant consented under MCR 6.006(C)(2). The same facts that support my conclusion that defendant did not waive his right of confrontation support my conclusion that defendant did not consent to the video testimony. Therefore, I would affirm the Court of Appeals' judgment and hold that the video testimony was not properly admitted under MCR 6.006(C).

Finally, I agree with the Court of Appeals that the error affected the outcome of the proceedings because the chain of evidence for the DNA could not have been established without the foundational testimony provided by Palusci and Wolfarth.

Therefore, I respectfully dissent and would affirm the Court of Appeals' decision to vacate defendant's convictions and sentences and remand for a new trial. The right of confrontation is too important for a court to condone an attorney's waiver or consent over the unequivocal objection of a criminal defendant.

Michael F. Cavanagh
Marilyn Kelly

4