# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STONE WALTER ANTISDALE,

        Defendant-Appellant.

UNPUBLISHED
March 16, 2017

No. 329459
Eaton Circuit Court
LC No. 14-020385-FC

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of unarmed robbery, MCL 750.530(1), first-degree home invasion, MCL 750.110a(2), and assault by strangulation, MCL 750.84(1)(b). The trial court sentenced defendant to serve concurrent terms of imprisonment of five to 15 years for the robbery conviction, five to 20 years for the home invasion conviction, and five to 10 years for the assault conviction. We affirm.

## I. FACTS

This case arises from a robbery that took place at Devonshire apartments on October 12, 2014. The complaining witness testified that defendant and an accomplice[1] forced their way into his apartment, threw him down, handcuffed him, bound his wrists with zip ties, bound his feet with electrical cord, and demanded to know where he kept money and marijuana. The complainant further testified that defendant placed him in a choke hold, causing him briefly to lose consciousness. The complainant additionally testified that when he indicated that he recognized defendant, the latter said to his accomplice, "we've got to kill him."

The complainant reported that defendant and his accomplice took two video game consoles, a crossbow, and several pieces of the equipment used for growing marijuana. During the investigation, it was determined that defendant asked his older brother to pawn the crossbow,

---

[1] The accomplice was separately convicted in relation to these events.

-1-

because defendant was but 17 years old at the time. Defendant admitted to using heroin every day, and having only a tenth-grade education.

## II. SCORING OF THE SENTENCING GUIDELINES

Defendant argues that the trial court improperly scored Offense Variables 3, 4, and 7 under the sentencing guidelines. We disagree.

This Court reviews the trial court's findings of fact for clear error, including "whether they are supported by a preponderance of the evidence." *People v Ackah-Essien*, 311 Mich App 13, 36; 874 NW2d 172 (2015). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Buie,* 491 Mich 294, 315–316; 817 NW2d 33 (2012) (internal quotation marks and citation omitted). This Court reviews de novo whether "the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute." *People v Armstrong*, 305 Mich App 230, 243; 851 NW2d 856 (2014).

Defendant argues that he should not have been assessed five points for OV 3, which is what MCL 777.33(1)(e) prescribes where a victim suffered bodily injury not requiring medical treatment. However, the complainant testified that he had red marks on his neck from where he was choked, on his wrists from being restrained with handcuffs and zip ties, and on his ankles from being tied with a lamp cord. A police deputy corroborated this testimony from having observed the same injuries. A preponderance of the evidence thus supported the conclusion that the complainant suffered bodily injury that did not require medical attention. Accordingly, the trial did not err when it determined that this evidence supported a score of five points for OV 3.

Defendant argues that OV 4 should have been scored at zero. The trial court assessed 10 points, which is what MCL 777.34(1)(a) calls for when "[s]erious psychological injury requiring professional treatment occurred to a victim." That section directs courts to "[s]core 10 points if the serious psychological injury may require professional treatment," while adding, "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2).

When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a presentence investigation report. *People v Thompson (On Remand)*, 314 Mich App 703; 887 NW2d 650 (2016). In this case, the trial court explained its scoring of OV 4 on the basis of the complainant's having reported in his victim impact statement that he suffered sleeplessness and was otherwise reliving the trauma of the assault, which included defendant's plausibly stating the intention to kill him. Additionally, the victim was subjected to being tackled, restrained, and choked to unconsciousness. As the statute explains, OV 4 is scored for injury that *may* require professional, even where, as in this instance, the victim did not actually seek such treatment. For these reasons, we conclude that a preponderance of the evidence supported the trial court's conclusion that the complainant suffered psychological injury requiring professional treatment for purposes of scoring OV 4.

OV 7 covers "aggravated physical abuse," MCL 777.37(1), and must be scored at 50 points if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the

offense," MCL 777.37(1)(a).  "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount."  *People v Hardy*, 494 Mich 430, 443–444; 835 NW2d 340 (2013).

The sentencing offense was first-degree home invasion, whose elements, as the trial court instructed the jury, consist of an unauthorized breaking and entering of a dwelling while intending to commit a robbery or larceny while another person was lawfully present.  In this case, then, according to the testimony, once defendant entered the victim's apartment in the victim's presence and without his permission, and took some of the victim's possessions, the elements of the offense were fulfilled.  Beyond that, however, the victim testified that defendant tackled him, helped "hogtie" him, and choked him until he passed out, and also threatened to kill him when he revealed that he recognized defendant.  These actions went beyond the minimum necessary to complete the offense of first-degree home invasion.  Further, defendant's purpose for tackling, choking, and hogtying the victim was obviously to compel the victim's submission and prevent his attempting to escape.  See *Hardy*, 494 Mich at 445.  Because defendant's aggression went beyond what was required to complete the offense, and because it was designed to substantially increase the victim's fear of further violence, the preponderance of the evidence supported the assessment of 50 points for OV 7.

### III.  *PEOPLE V LOCKRIDGE*

Defendant argues that, because the trial court used judicially found facts to score the three offense variables discussed above, he is entitled to a remand for resentencing.  We conclude that defendant has already received all the post-sentencing process required by *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015), and related cases.

For appeals that were pending when *Lockridge* was decided, if a defendant's OVs were scored using judicially found facts,

> [t]o make a threshold showing of plain error that could require resentencing, a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range.  If a defendant makes that threshold showing and was not sentenced to an upward departure sentence, he or she is entitled to a remand to the trial court for that court to determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion. [*Id.* at 399.]

In *Lockridge*, our Supreme Court specified as a model for such remands *United States v Crosby,* 397 F3d 103 (CA 2, 2005):

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing.  If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3)

need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Lockridge*, 498 Mich at 398 (internal quotation marks and citation omitted).]

In this case, not in dispute is that defendant's minimum sentence fell within the guidelines range, or that the three OVs in question were scored by judicial fact-finding, not admitted by defendant or determined beyond a reasonable doubt by the jury. Defendant thus met the elements necessary under *Lockridge* for a *Crosby* remand.

Even so, a *Crosby* remand is unnecessary in this case. A *Crosby* remand directs the trial court to determine if it would have issued a "materially different sentence." *Lockridge*, 498 Mich at 398. Defendant moved for resentencing under *Lockridge*, and the trial court took the opportunity to explain as follows:

> At the time I sentenced you, the—guideline range was 51 to 84 on the bottom. I did not sentence you to 51 months at the bottom. I sentenced you to 60 months or five years. Based on the facts and the circumstances that were available at sentencing and the nature of the crime and all other permissible considerations by the Court, I did not feel that the bottom of the guideline, 51 months, was appropriate. Conversely, at the time of your sentence, the top of the guidelines was 85 months or seven plus years. I did not feel that was appropriate, either.

> I did consider all of the things that I was required to, to sentence you, including the seriousness of the . . . offense, the protection of our community, the need to punish people that break into people's home[s] and—and strangle them, but also the need . . . to rehabilitate. I did consider looking at your age and your education and the fact that this activity appeared to be fueled by a drug problem.

> And considering everything I was required to consider, it was the Court's opinion that five years was a proportionate sentence for the crime that a jury convicted you of; therefore, regardless of the scoring of the OVs, I would not have done anything different.

Because the trial court has already considered whether it would have issued a materially different sentence had it understood that the guidelines recommendation was advisory, and answered the question in the negative, defendant has already received what relief that a *Crosby* remand would have provided.

## IV. PROPORTIONALITY

Defendant argues that the trial court issued a disproportionate sentence. We disagree.

Where a minimum sentence is within the guidelines, affirmance is required unless the guidelines are scored incorrectly or the trial court relies on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016); MCL 769.34(10). As discussed above, the trial court's findings of fact were supported by the preponderance of the evidence, and the court properly scored the challenged offense variables. The resulting recommendation for the minimum sentence under the guidelines was 51 to 85 months, putting the minimum sentence the trial court actually imposed, then, squarely within that range.

In considering defendant's sentence, the trial court explained that it considered the defendant's age, drug addiction and lack of education, and elaborated as follows:

> I have to look at the victim and I also have to look at the nature of the crime, which is invading somebody's apartment, participating in hogtying them, strangling them, stealing from them, getting your brother involved by going to the pawn shop with the bow and arrow and lying about that to your brother. That's serious. This is not . . . a minor crime. This is really, really serious stuff. And, you made extremely poor decisions that, you know, will have an impact on this victim, probably for the rest of his life.

The evidence well supported the conclusion that defendant participated in the robbery, including in "hogtying" the victim, and that he involved his brother afterward. Further, the victim's impact statement well supported the trial court's conclusions concerning how the experience affected him, and there is nothing in the record to suggest otherwise. Because the guidelines were scored correctly, and because the trial court did not rely on inaccurate information, the court properly sentenced defendant within the guidelines recommendation, and the attendant presumption of proportionality must hold sway.

For these reasons, we reject defendant's challenges to his sentence.

Affirmed.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Deborah A. Servitto