*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LEE MODZELEWSKI,

        Defendant-Appellant.

UNPUBLISHED
August 29, 2024

No. 358860
Ingham Circuit Court
LC No. 20-000341-FC

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals by right his sentences following jury-trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (victim older than 13 years of age but younger than 16 and is related to offender by blood or affinity to the fourth degree), one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), (2)(b) (sexual contact with victim younger than 13 and offender 17 or older), and six counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d) (sexual penetration with person related by blood or affinity to the fourth degree). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 450 to 900 months' imprisonment for each count of CSC-I, 300 to 900 months' imprisonment for his CSC-II conviction, and 320 to 900 months' imprisonment for each count of CSC-III. We Affirm.

## I. BACKGROUND

This case arises from approximately seven years of sexual abuse that defendant perpetrated against his daughter, KS. Defendant was in prison when KS was born and did not meet her for the first time until she was 11 years old. Initially, defendant viewed KS only as his daughter and gradually exercised more parenting time. Defendant sexually abused KS for the first time when she was 12 by reaching into her shorts and touching her genitals. Defendant subsequently went about 15 months without seeing KS after he separated from his wife, and when he and KS were reunited, he suddenly began to view her as a romantic partner. When KS was 13 or 14 years old, defendant began performing coitus on her. KS described disassociating during these episodes, and she did not resist defendant because, after not having a father for most of her childhood, KS was

-1-

scared of losing him. Defendant performed coitus on KS, along with other sex acts, with regularity throughout her teenage years. Over time, KS became used to the abuse, and it slowly seemed normal to her. KS described her relationship with her father during that period as "like we were dating." After graduating high school, KS moved in with defendant. The two lived together in multiple homes where the sexual abuse continued. The abuse did not end until KS's mother accessed KS's phone and discovered that KS and defendant had been exchanging nude photographs of one another.

This case is unusual in that defendant declined plea offers and exercised his right to a trial by jury despite admitting guilt to almost all of the crimes with which he was charged; defendant only denied touching KS when she was 12. Defendant testified at trial and corroborated most of KS's testimony; he acknowledged that he was essentially confessing and explained that he wanted to be heard because there are "two sides to every story." Defendant explained his belief that he and KS had a two-way, reciprocal relationship that she initially pursued. He denied grooming or manipulating KS and insisted that she was an equal participant. He viewed KS as his soulmate, repeatedly stated that he loved her, and described how she would give him gifts, including a promise ring. He said that he would do anything for KS, but he viewed her as "unappreciative" of the fact that he would be spending the rest of his life in prison for her. He described himself as "guilty of loving my daughter" and admitted to having broken the law by virtue of the fact that "your law says, you know, if she's 13 she's not allowed to have sex at this age." Defendant viewed it as unfair that he was the only person being punished given his perception of KS as a free, willing, and equal participant. Defendant was found guilty as described above, and at sentencing, he continued to defend his conduct despite admitting guilt to the crimes. He complained that the court was "condemning" him because "the state law says" that he "can't have sex with a minor" and then lamented the fact that KS "made the conscious, willing choice to do so."

Defendant was sentenced as described above, and this appeal followed.

II. PSIR

Defendant argues that he is entitled to resentencing due to a myriad of errors in his PSIR, none of which pertain to the scoring of the sentencing guidelines. We conclude that defendant waived appellate review of the issue by affirmatively approving the PSIR at sentencing.

"This Court has defined 'waiver' as the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012) (quotation marks and citation omitted). "Defense counsel cannot acquiesce to the court's handling of a matter at trial, only to later raise the issue as an error on appeal." *Id.* at 312 (quotation marks and citation omitted).

> [Waiver] differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an "error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (2000) (quotation marks and citations omitted).

The following exchange that occurred at defendant's sentencing hearing is decisive on this issue:

> *The Court.* [Defense counsel], have you had a chance to go through the Pre-Sentence Report with your client?
>
> *Defense Counsel.* Yes. I went out to the jail yesterday afternoon and we spent a lot of time going over it, your honor.
>
> *The Court.* And do you have any additions, deletions[,] or corrections to the report?
>
> *Defense Counsel.* The report is actually accurate, you honor.

This is more than a mere failure to object; defense counsel specifically stated that the PSIR was accurate. Therefore, any challenge to the accuracy of the PSIR has been waived. See *Carter*, 462 Mich at 214 ("A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." (Quotation marks and citation omitted.)).

## III. REMORSE

Defendant argues that the trial court erred by finding that defendant lacked remorse, failed to take responsibility for his actions, and blamed KS for his crimes. We disagree.

The trial court's factual findings are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).

After defendant finished speaking, the trial court offered the following rationale for its sentence:

> All right. Thank you. Mr. Modzelewski, of course there is a 25 year mandatory minimum in this case. But, even if there weren't, a sentence would be justified beyond that just based on the fact that you are a proven, a person with a proven propensity to commit sexual assault on, on people and you have demonstrated absolutely zero insight into your behavior. Your attorney has tried to put the best face on it and you have demonstrated that, that wasn't deserved and that your position here is that [KS] is completely at fault.
>
> I'm at a loss as to understand why anyone cannot—
>
> [Defendant interrupts.]
>
> I'm at a loss to understand why anyone could possibly think that [KS] was at fault for this. I cannot even begin to dispel you from your twisted, demented version of this entire and I won't even call it a relationship. It's a twisted, sick, manipulative years long assault on a minor. You could have been a father if you wanted. But, you chose and although you paint yourself as the victim and you had no choice, you chose to be an assaulter instead of a father.

Defendant's trial testimony and sentencing allocution supported the court's conclusion that he blamed SK, viewed himself as the victim, lacked insight into his wrongdoing, and failed to recognize the consequences of his actions. Defendant repeatedly emphasized his belief that KS was an equal participant in the "relationship" and that she wanted it. According to defendant, KS initiated the relationship, and he never pursued it. He described the relationship as involving "reciprocated affection" and described her giving him gifts, including a "promise ring." Defendant stated that KS voluntarily sent him nude photographs and that he could produce love letters from KS demonstrating her desire to be in a relationship with him. Indeed, defendant specifically denied being "the dominant person" in this dynamic, and he insisted that he never groomed or manipulated KS, stating that KS acted entirely of her own free will.

Defendant emphasizes that he admitted his guilt, but there is a difference between admitting that conduct violated the law and admitting that the conduct was wrong. Indeed, after saying, "I'm guilty," defendant clarified that he was "guilty of loving my daughter" because "state standards" disallowed this. Defendant stated repeatedly, both during his testimony and at sentencing, that he was guilty because "the law" prohibits sexual activity with someone as young as KS. Defendant expressed frustration with the fact that he was the only one being punished even though KS "made the conscious, willing choice to" have a relationship with him, and he minimized his role by suggesting that his substance abuse reduced his inhibitions. Defendant argues that he expressed remorse, but he specifically said at sentencing, "I don't know how to have remorse from this situation" because of KS's active and willing participation.

There were points both at trial and sentencing when defendant openly criticized KS for failing to empathize with *him*. Defendant complained that she was "unappreciative" of the fact that he was "giving up [his] life for" her and described her as selfish. Defendant attacked KS for failing to think about the risks he was facing and suggested that KS only thought about "what she wanted." Defendant insisted that KS's testimony demonstrated that KS was jealous of the relationship defendant had with his now ex-wife. Defendant suggested that KS had "red flags" because he could tell that "she didn't care" about the fact that he could go to prison. Defendant demonstrated a complete lack of insight into the harm he inflicted upon KS, noting only that she would not have her father around when she reached various milestones, such as her wedding.

In conclusion, the record thoroughly supports the trial court's conclusion that defendant was unremorseful, blamed KS, and did not recognize the harm that he caused.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michelle M. Rick