*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY WADE HORTON,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2021

No. 348236
Wayne Circuit Court
LC No. 18-001398-02-FC

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions[1] of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), stealing another's financial transaction device, MCL 750.157n(1), carrying a concealed weapon (CCW), MCL 750.227, possession of a firearm by a felon (felon-in-possession), MCL 750.224f, and possession a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 18 to 30 years' imprisonment for armed robbery, 10 to 20 years' imprisonment for first-degree home invasion, two to four years' imprisonment for stealing another's financial transaction device, two to five years' imprisonment for CCW, two to five years' imprisonment for felon-in-possession, and two years' imprisonment for felony-firearm. We affirm.

## I. BACKGROUND

This case arises from the invasion of Joseph Drouillard's home in Harper Woods. Drouillard and his friend Steven Law returned to the home around 8:00 p.m. Law went to the back door to leave, but when he grabbed the handle, the door was pushed back in his face. A man wearing a black coat and green pants pointed a gun at Law's forehead. Law later identified this man in court as Michael Gadie. Law was struggling with Gadie when a second man wearing a hooded black jacket and a mask over his lower face began punching Law in the ribs. Gadie shot

---

[1] Defendant was acquitted of possession with intent to deliver marijuana, MCL 333.7401(2)(d), and resisting a police officer, MCL 750.81d(1).

-1-

Drouillard's dog. Upon hearing the gunshot, Drouillard looked through the kitchen and saw Gadie, but not the second man. Drouillard ran outside to hide in a neighbor's yard. Gadie and the second man walked Law through the house and into the basement looking for marijuana. Gadie found a garbage bag full of marijuana in the basement and left the house with his accomplice. Drouillard saw Gadie and the second man walk toward an early 2000's Ford Taurus parked down the street. It was too dark for him to see the second man's clothing.

Drouillard called the police, who quickly located the Taurus. When the Taurus stopped in Detroit, its driver, defendant, was arrested. He was wearing a gray sweatshirt and a knit cap with the top cut off so it could be pulled down around his face. The police found an envelope addressed to Drouillard and a black hooded jacket in the back seat of the Taurus. Gadie was arrested on the porch of a nearby home, about 50 feet from a garbage bag full of marijuana. He was wearing a black coat and camouflage pants. A gun and Drouillard's wallet were recovered outside the same home.

At trial, defendant testified that he sometimes drove his cousin, Gadie, places for money. He did not ask what Gadie did on such trips. Defendant testified that on the night of the robbery, he and Gadie picked up Gadie's friend, JR, who defendant had never met before. Defendant testified that he stayed in the car while Gadie and JR went into a house in Harper Woods and came out with a black garbage bag. According to defendant, JR got out at his girlfriend's house a few blocks from Drouillard's house. Defendant did not know why the police were following him or why he was arrested because defendant had not done anything wrong and he had no knowledge of Gadie's actions. The jury convicted defendant of first-degree home invasion, armed robbery, stealing another's financial transaction device, CCW, felon-in-possession, and felony-firearm. Defendant now appeals.

## II. PRIOR CONVICTIONS

Defendant argues that, when the prosecution sought to introduce defendant's prior breaking and entering convictions to impeach his testimony, the trial court abused its discretion by failing to conduct a proper MRE 609 analysis and by simultaneously admitting the prior convictions as other-acts evidence under MRE 404(b), even though the prosecution did not provide notice of its intent to introduce other-acts evidence. We agree, but the error was harmless in light of the untainted evidence against defendant.

This court reviews "for an abuse of discretion a trial court's decision to admit or exclude evidence, while reviewing de novo any preliminary legal questions regarding admissibility." *People v Bass*, 317 Mich App 241, 255; 893 NW2d 140 (2016). A trial court abuses its discretion when it "chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 256 (quotation marks and citation omitted). Therefore, "[a] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. (quotation marks and citation omitted). A preserved error regarding the admission of a prior conviction as impeachment evidence is subject to harmless error analysis under MCL 769.26. *People v Snyder*, 301 Mich App 99, 111; 835 NW2d 608 (2013). "Accordingly, reversal is only required if such an error is prejudicial; in this context, 'prejudicial' means that, after examining the error and 'assess[ing] its effect in light of the weight and strength of the untainted evidence . . . it affirmatively appears that the error asserted undermine[s] the reliability of the verdict.' " *Id*., quoting *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (alterations in original). "In other words, the effect of the

error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

MRE 609(a) provides, in relevant part:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

\* \* \*

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

MRE 609(b) outlines the analysis a trial court must conduct when determining whether a prior conviction's probative value as to a criminal defendant's credibility outweighs its prejudicial effect:

(b) Determining probative value and prejudicial effect. For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.

In this case, defense counsel argued that defendant's prior breaking and entering convictions were minimally probative of defendant's truthfulness and highly prejudicial because their similarity to the charged offenses of home invasion and armed robbery strongly invited an improper propensity inference. The prosecutor responded by incorrectly stating that, under MRE 609, a prior conviction with an element of theft is admissible unless it is "substantially more prejudicial than probative." The prosecutor asserted that defendant's prior convictions were not substantially more prejudicial than probative but did not explain why that was the case beyond stating that such convictions would be admissible to impeach a complaining witness.

The trial court asked how old defendant's convictions were. The prosecutor answered that defendant had five breaking and entering convictions. He was released from prison on the most recent conviction in November 2017, and the four convictions before that were discharged in

February 2012. Defense counsel requested that the trial court make findings regarding prejudicial effect as required by MRE 609(b). The trial court responded, "Findings of fact regarding what?" Defense counsel answered that MRE 609(b) required the trial court to analyze probative value and prejudicial effect on the record and with reference to the factors stated in the rule. The prosecutor stated she did not "know what [defense counsel] was talking about" because MRE 609 only required the trial court to consider the age of the convictions and degree to which they were probative of defendant's truthfulness. The trial court ruled:

> Well, there certainly is, from what's been placed in this record, evidence of a pattern of theft and dishonesty since 2005, and it's been continuous. It hasn't subsided. I don't think that that's a situation where the prejudicial value substantially outweighs the probative value. I will give the jury a special instruction, a cautionary instruction, that they are not to convict the defendant here because of the past convictions, but they can use that evidence to decide if the Defendant is being truthful here. They can use it to decide if he has a pattern of behavior. And those things are permissible under the law.

Defense counsel objected and the following exchange occurred:

> [*Defense Counsel*]: Well, Your Honor, I'm going to ask the Court to not allow for the purposes of establishing a pattern. I think that would go to propensity, or it would be a 404(b) matter. For credibility only, I would ask.
>
> *The Court*: No.
>
> [*The Prosecutor*]: No. The Court can consider for 404(b) evidence as well.
>
> *The Court*: That's right.
>
> [*The Prosecutor*]: Since you brought it up, she can consider it.
>
> *The Court*: It's right in the Court Rules.
>
> [*The Prosecutor*]: Right.
>
> *The Court*: It's right in the Court Rules.
>
> [*Defense Counsel*]: 404(b) requires attending notice, which hasn't been satisfied.
>
> [*The Prosecutor*]: No, it doesn't. That certainly has been satisfied because we've been doing this case for 18 months, and today [you] bring a motion to limit 609.
>
> *The Court*: The Court has made its ruling.

Later on, when defendant took the stand, the prosecutor asked him if he had been convicted of a crime involving a false statement, theft, or dishonesty in the past 10 years. Defendant

-4-

answered that he had been convicted of a crime involving theft in 2005 and in 2008. The prosecutor asked him, "Don't you have five breaking and entering convictions?" Defendant responded that he only had three. The prosecutor showed him his criminal record, and he admitted to four breaking and entering convictions. He admitted that he was released from prison for his most recent breaking and entering conviction on November 17, 2017.

The trial court abused its discretion by admitting defendant's prior convictions as impeachment evidence without conducting the analyses required by MRE 609(a)(2)(B) and (b) and by admitting the evidence under MRE 404(b). First, MRE 609(a)(2)(B) requires a trial court, as a threshold matter, to determine whether the prior conviction has "significant probative value on the issue of credibility . . . ." In *Snyder*, 301 Mich App at 108-109, quoting *People v Allen*, 429 Mich 558, 610-611; 420 NW2d 499 (1988), this Court observed that our Supreme Court has held that a recent breaking and entering conviction was "only 'moderately probative of veracity.' . . ." Therefore, this Court held that a defendant's two-year-old larceny from a building conviction lacked "significant probative value on the issue of his credibility" because "the trial court has provided us with no reasons why the crime or its surrounding circumstances are indicative of veracity." *Snyder*, 301 Mich App at 109.

Likewise, in this case, the trial court did not examine the circumstances surrounding defendant's prior convictions or explain why they were probative of truthfulness. Instead, the trial court determined that the convictions were probative because they established "a pattern of theft and dishonesty since 2005." In other words, the trial court's theory of admissibility was that defendant's prior convictions were probative of his truthfulness because they established a pattern of similar acts of which the charged offenses were a part. However, MRE 609(b) plainly requires that similarity of the prior conviction to the charged offense must be weighed as prejudicial, not probative. The rule requires that a trial court may "only" consider the age of the conviction and whether it is indicative of veracity when determining probative value, and that a trial court may "only" consider similarity to the charged offense and whether admission will deter the defendant from testifying when determining prejudicial effect. MRE 609(b). In this case, the trial court weighed the similarity of the prior convictions to the charged offenses as probative. To the contrary, this Court has observed that "with regard to prejudicial effect, the scale tilts decidedly towards inadmissibility" when "the risk is high that a jury would convict the defendant of this offense because it knew he was guilty of the identical offense in a previous case." *Snyder*, 301 Mich App at 110 (quotation marks and citation omitted). The same is true when the prior conviction is "very similar" to the charged offense. *Id*. (quotation marks and citation omitted). Therefore, the trial court's finding that defendant's prior convictions established "a pattern of behavior," under a correct application of MRE 609(b), yields the conclusion that the prior convictions are highly prejudicial in this case.

The trial court also mistook the balancing test of MRE 609(a)(2)(B) for the balancing test of MRE 403. The trial court ruled, "I don't think that [this is] a situation where the prejudicial value substantially outweighs the probative value." To the contrary, MRE 609(a)(2)(B) requires a trial court to "determine[] that the probative value of the evidence outweighs its prejudicial effect" before admitting prior convictions to impeach a criminal defendant. Under the proper balancing test, the probative value of defendant's prior convictions as to his truthfulness does not outweigh their prejudicial effect because, as this Court held in *Snyder*, 310 Mich App at 109-110, prior theft convictions without special circumstances are not particularly probative of truthfulness,

-5-

but they are highly prejudicial when "very similar" to the charged offense. Therefore, the trial court abused its discretion by admitting defendant's prior breaking and entering convictions under MRE 609 because the trial court effectively analyzed the evidence under MRE 404(b).[2]

However, the trial court's error was harmless. The identity of Gadie's accomplice was the only issue in dispute at trial. While neither Drouillard nor Law directly and unimpeachably identified defendant, there was significant circumstantial evidence that he was Gadie's accomplice. Defendant was arrested shortly after the robbery, driving the early-2000's Ford Taurus that Drouillard had seen the robbers escape in. He had a manila envelope of marijuana seeds that was addressed to Drouillard in his back seat. While Law's testimony was inconsistent regarding the color of the shirt and pants that Gadie's accomplice wore, he was consistent from the time of his interview with the police that Gadie's accomplice wore a black hooded jacket and a mask over his face. Defendant was wearing an unusual item when he was arrested—a knit cap with the top cut out so it could be pulled down around his face and neck. A black hooded jacket the same size as defendant's sweater was found in the back seat of his car when he was arrested. Defendant never explained who that jacket belonged to. Gadie was wearing his own black jacket when he was arrested. Defendant testified at trial that Gadie's true accomplice, "JR," was wearing a blue jacket without a hood, not a black jacket with a hood.

A third man was not seen, even momentarily, by Drouillard, Law, or the police officers at any time during the res gestae of the robbery. Gadie was 6 feet, 1 inch tall and weighed 290 pounds when he was arrested, and defendant was 5 feet, 11 inches tall and weighed 200 pounds when he was arrested. Defendant testified that JR was 5 feet, 9 inches tall and weighed about 170 pounds. Law described Gadie's accomplice as having a "medium build" compared to Gadie. Drouillard testified that Gadie's accomplice was "slimmer than Gadie" but did not indicate that he was significantly shorter than Gadie. In summary, all the evidence, except for defendant's testimony, indicates that defendant, and not JR, was Gadie's accomplice. Even if defendant's prior breaking and entering convictions were not admitted, it is unlikely that the jury would have believed defendant's story that he was merely along for the ride without any knowledge of what Gadie and "JR" were doing. Therefore, defendant is not entitled to a new trial because the trial court's error under MRE 609 was harmless.

## III. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed misconduct requiring reversal when she refreshed Law's memory of the clothes Gadie's accomplice wore during the robbery with his prior description of the clothes defendant was wearing in court at the preliminary examination, and when she subsequently used that testimony to argue that Law had consistently and accurately identified defendant as Gadie's accomplice. We agree, but reversal is unwarranted in light of the untainted evidence against defendant.

---

[2] The prosecution concedes that defendant's prior convictions were not admissible under MRE 404(b) because the prosecutor never gave notice of her intent to introduce other-act evidence as substantive evidence of guilt.

This court reviews preserved claims of prosecutorial misconduct de novo. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

"It is inconsistent with due process when the prosecution allows false testimony from a state's witness to stand uncorrected." *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). "[W]hile . . . the prosecutor need not correct every instance of mistaken or inaccurate testimony, it is the effect of a prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes." *Id*. (quotation marks and citation omitted). "The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability." *Aceval*, 282 Mich App at 390. [A] conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment, i.e., "if there is any reasonable likelihood that the false testimony could have affected the jury's judgment. *Id*. at 389.

In this case, Law initially testified at trial that Gadie's accomplice was wearing a black coat, blue pants, and a mask. He did not remember what color the accomplice's shirt was. He did not remember testifying to the color of the accomplice's shirt at the preliminary examination. The prosecutor directed Law's attention to lines 12 to 17 of page 18 of the preliminary examination transcript. Defense counsel objected, stating, "That's a mischaracterization. This is identification for in[-]court testimony, not what the person was wearing at the time of the incident." The prosecutor responded, "What is he talking about? I don't know what he's talking about." The trial court stated, "I don't know. [D]efense counsel can cover it on cross." The prosecutor questioned Law regarding his preliminary examination testimony as follows:

> *Q*. And what color did you testify the shirt was?
>
> *A*. Gray shirt.
>
> *Q*. Gray shirt, blue pants, black shoes?
>
> *A*. Correct.
>
> *Q*. Now did you identify the defendant in court?
>
> *A*. I did.

Law then identified defendant as Gadie's accomplice at trial. He also testified that defendant was wearing a gray shirt, a mask that went up to his nose, and a hood at the time of the robbery.

On cross-examination, defense counsel directed Law to page 15, lines 16 to 17 of the preliminary examination and questioned him as follows:

> *Q*. You couldn't say what the color of the second guy's pants were, correct?
>
> *A*. Yes.

*Q.* And then the prosecutor asked you a question earlier on direct about what the person, the second guy was wearing, and she directed you to page 18 to refresh your memory, right?

*A.* Yes.

*Q.* And I want to refresh [sic] ask you, the question that you were asked in that same section [of the preliminary examination] where you describe the clothing, you were asked by the prosecutor that day, "Okay. Now the smaller guy that you described who had the full, the smaller guy that you described, do you see him here in court today?" Your answer, "Yes." Then you were asked a question, "Okay. And can you tell me what he's wearing?" And you gave the answer, "Gray shirt, I believe those are blue pants and black shoes." Do you remember that?

*A.* Yes.

*Q.* So in that instance, you are identifying Mr. Horton in court, right?

*A.* Yes.

*Q.* You are not recalling what he is wearing on the night of the incident, correct?

*A.* Yes. As to what the question I was asked, yes.

\* \* \*

*Q.* So when you say gray shirt, you're talking about [defendant's] clothes at the preliminary examination, correct?

*A.* Yes.

A short time later, defense counsel resumed impeaching Law with his preliminary examination testimony:

*Q.* So rephrasing the question, isn't it true on cross-examination at the preliminary exam, you admitted that you could not make a positive identification of [defendant] as the second person?

*A.* Do not recall.

\* \* \*

*Q.* Line [6 on page 35], "No, you are not positive it was [defendant] at all, are you?" Your answer was, "I don't know how to answer these questions." Then you were asked a follow-up question, "Well it's yes or no, are you positive that it was my client that was there or not?" And then you answered, "No." Do you remember that?

-8-

*A.* I do not recall.

*Q.* Would looking at the transcript refresh your recollection?

*A.* No.

* * *

*Q.* So you are denying saying that you could not positively identify Mr. Horton in court at the preliminary examination?

*A.* I'm not denying that, I just don't recall.

*Q.* Okay. And then moving onto page 37, you were also asked a question, "So you really can't ID their faces at all?" And your answer was, "No," do you recall that?

*A.* No.

The prosecutor intentionally questioned Law in a misleading manner in order to deceive the jury that he had, at the preliminary examination, accurately described the clothing that defendant was wearing when he was arrested. As defense counsel revealed on cross-examination, it is plain to see that when Law referred to defendant's "gray shirt," he was referring to the shirt that defendant was wearing at the preliminary examination, not the shirt that Gadie's accomplice was wearing during the robbery. The prosecutor could not possibly have been mistaken about the meaning of Law's preliminary examination testimony, yet she used it to solicit his testimony at trial that Gadie's accomplice was wearing the same gray shirt that defendant was wearing when he was arrested.

The prosecutor also asked Drouillard a vague question regarding defendant's clothing in order to secure an identification. Drouillard clearly testified that he only saw Gadie in his house and that it was too dark outside for him to recognize what Gadie's accomplice was wearing. Drouillard subsequently testified that, after the incident, he saw defendant and Gadie in a news article. Defense counsel objected that any identification from photographs in a news article about the incident were improperly suggestive for purposes of identification. The prosecutor asked Drouillard if "the individual" he saw in the news article was wearing the same clothing as "the person in your house." When Drouillard answered "yes," the prosecutor indicated for the record that Drouillard had identified defendant as "the person in [his] house." On cross-examination, Drouillard testified that the person he saw in the news article who was wearing the same clothing as the person he saw in his house was Gadie, not defendant.

During her closing argument, the prosecutor again attempted to deceive the jury into believing that Law had, at the preliminary examination, correctly identified the gray shirt defendant was wearing when he was arrested as the shirt worn by Gadie's accomplice during the robbery, even after defense counsel had conclusively demonstrated the falsity of that assertion. She argued that "[d]efendant had on the gray shirt and the blue pants and he took Mr. Law through that house looking for marijuana." She argued that Law testified that Gadie's accomplice was

wearing "the gray shirt and the blue pants from the preliminary examination and from the testimony on the stand."

"A prosecutor has an affirmative duty to correct false testimony. . . ." *Smith*, 498 Mich at 476. "A prosecutor's capitalizing on the false testimony . . . is of particular concern because it reinforce[s] the deception of the use of false testimony and thereby contribute[s] to the deprivation of due process." *Id.* (quotation marks and citation omitted; second and third alterations in original.) However, there is no reasonable likelihood that the jury's judgment was affected by the prosecutor's misconduct. Every time the prosecutor attempted to create an uncontroverted eyewitness identification of defendant at the scene of the crime, defense counsel exposed the false or misleading aspects of the testimony. He argued at length during his closing argument that Law's and Drouillard's identifications of defendant were not reliable. Because the jury was well aware of the deficiencies in the identifications and because, as discussed earlier, the circumstantial evidence strongly suggested that defendant was Gadie's accomplice, the prosecutor's misconduct does not warrant reversal in this case.

## IV. SENTENCING GUIDELINES

Defendant argues that he is entitled to resentencing because the sentencing court erred in assigning points to Offense Variable (OV) 8 (victim asportation or captivity) when there was no evidence of captivity beyond the time necessary to commit the offense, OV 9 when there was no evidence that second victim was placed in danger of serious injury or death, and OV 10 when there was no evidence of preoffense predatory conduct. We disagree.

"A claim that the sentencing guidelines range was improperly calculated is preserved by raising the issue at sentencing, in a motion for resentencing, or in a motion to remand." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). Defendant objected to the assessment of OVs 8 and 10 at sentencing. Defendant filed a motion to remand arguing that 10 points was improperly assigned to OV 9. Therefore, defendant's arguments as to all three OVs are preserved for review. See *id*.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A factual determination is clearly erroneous if this Court "is left with a definite and firm conviction that an error occurred." *People v Buie*, 491 Mich 294, 315-316; 817 NW2d 33 (2012) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

A criminal defendant's sentence is valid only if it is determined in reliance on accurately scored guidelines and accurate information. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). Therefore, a defendant is entitled to resentencing when a scoring error alters his sentencing guidelines range. *Id*. at 90-91. At sentencing, defense counsel stated that the body of the presentence investigation report (PSIR) was accurate and that defendant's prior record variables (PRVs) were assessed correctly, but he had objections to the scoring of several OVs. Defense counsel argued that OV 8 (victim asportation or captivity) was assigned 15 points but it should be

assigned 0 points. He argued that the victims were not held captive longer than necessary to complete the offenses, which only lasted for a minute or two. The sentencing court disagreed.

In *People v Barrera*, 500 Mich 14, 21-22; 892 NW2d 789 (2017), our Supreme Court held that 15 points were correctly assigned to OV 8 "because [the] defendant took the victim from the living room into his bedroom in order to sexually assault her." Our Supreme Court explained that from those facts alone, "the trial court could reasonably determine by a preponderance of the evidence that the victim was "removed" to a location where the sexual assault was less likely to be discovered, which rendered the location a "place of greater danger" or "a situation of greater danger." *Id*. at 22. Likewise, in this case, the record established that Gadie and defendant forcibly moved Law to the basement—a place of isolation and greater danger. Therefore, the sentencing court did not err in assigning 15 points to OV 8.

Defendant also argues that 10 points were incorrectly assigned to OV 9 because only one victim—Law—was placed in danger of serious injury or death. Defendant's argument lacks merit. This Court has held that "[a] person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds, app dis in part 495 Mich 876 (2013). In this case, only one room, the kitchen, separated Drouillard from Gadie when he shot Drouillard's dog. Drouillard's close proximity to a gunshot is sufficient to count him as a victim for purposes of OV 9. See *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). Therefore, the sentencing court did not err in assessing 10 points for OV 9.

Finally, at sentencing defense counsel argued that OV 10 (exploitation of vulnerable victim) was assigned 15 points but it should be assigned 0 points. He argued that there was no evidence of "lying in wait or special relationship or some type of predatory action that was taken other than that which was used for the offense." The sentencing court disagreed.

Our Supreme Court has instructed that "predatory conduct," for purposes of OV 10, is "behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008). In this case, the evidence established that Gadie and defendant engaged in predatory preoffense conduct by selecting Drouillard's home for invasion on the basis of his marijuana growing operation and laid in wait in the dark, armed with a gun, in the back of the house concealed from view until Law opened the back door and they could force their way into the house at gunpoint to find that marijuana. Therefore, the sentencing court did not err in assigning 15 points for OV 10.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel

-11-