*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTIN DAVID LANGSFORD,

        Defendant-Appellant.

UNPUBLISHED
May 12, 2022

No. 354311
Marquette Circuit Court
LC No. 19-058134-FH

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and domestic violence, third offense, MCL 750.81(2), (5).[1] Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 25 to 50 years' imprisonment for AWIGBH and 40 to 60 months' imprisonment for domestic violence. We affirm.

## I. BACKGROUND

This case arises from an incident that occurred on May 18, 2019, in which defendant was accused of throwing his then girlfriend on the ground breaking her leg, then bouncing up and down on top of her while slapping her face and making her look at him. Defendant was arrested on June 8, 2019, and his trial was initially scheduled for January 2020. However, another trial scheduled for that day took precedence, and defendant was not tried until April 21 and 22, 2020. By this time, the COVID-19 pandemic was underway, and the trial court had implemented safety precautions intended to mitigate the spread of the disease. As such, the courtroom was limited to 10 people, several witnesses testified over Zoom, and social distancing was required. After a bench trial, defendant was found guilty and sentenced as described above. His sentence of 25 to

---

[1] Defendant was found not guilty of one count of felonious assault, MCL 750.82.

50 years' imprisonment for AWIGBH was the mandatory minimum sentence prescribed by MCL 769.12(1)(a) because defendant was convicted as a fourth-offense habitual offender.

## II. SPEEDY TRIAL

Defendant first argues that the trial court violated his right to a speedy trial. We disagree.

Defendant preserved this issue by making a formal demand for a speedy trial in the trial court. See *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). Whether a defendant's right to a speedy trial has been violated presents a constitutional issue reviewed de novo. *Id*.

Both the United States and Michigan Constitutions guarantee criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). This Court evaluates allegations of speedy trial violations by balancing the following four factors, known as the *Barker*[2] factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262.

The length of the delay in this case was 10 months and 13 days. When considering the length of the delay, there is not a fixed number of days after which a defendant's right to a speedy trial is violated, see *id*., and courts instead consider the circumstances surrounding the case, see *People v Collins*, 388 Mich 680, 690; 202 NW2d 769, 774 (1972) ("This Court in considering length of delay has always considered the surrounding circumstances of the case."). The trial in this case lasted two days and involved the testimony of six witnesses, including testimony from two competing expert witnesses about the possible causes for the victim's injuries. Thus, while this case may appear to be a straight-forward assault at first glance,[3] the circumstances surrounding this case were more complex. Moreover, while the delay of 10 months and 13 days was more than the 180 days that the Legislature has deemed reasonable for a person in custody to be brought to trial, see MCL 780.131, it was far less than the 18-month delay that courts presume is prejudicial, see *People v Den Uyl*, 320 Mich 477, 494; 31 NW2d 699 (1948). In light of the foregoing, we conclude that this factor weighs against defendant's claim.

Turning to the second factor, the reason given for the delay was docket congestion. Defendant contends that this Court should ignore this explanation for the delay, and instead conclude that no reason was given, because the trial court only made "fleeting reference" to docket congestion in explaining the delay. Defendant cites no caselaw to support such an argument, and

---

[2] *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed2d 101 (1972).

[3] The crimes of which defendant stood accused were serious, but the seriousness of the offense does not necessarily make the case complex. See, e.g., *Collins*, 388 Mich at 689 (recognizing that the crime at issue—armed robbery—was "a serious crime," but describing it as "a simple street crime" given the circumstances of that case).

we otherwise disagree with his assertion that a concise explanation for the delay is equivalent to a failure to explain the delay.[4] Returning to the speedy-trial analysis, docket congestion as a reason for delay weighs against the prosecution, but is "given a neutral tint" and "assigned only minimal weight." *Waclawski*, 286 Mich App at 666. Accordingly, this factor weighs against the prosecution, but only minimally.

The third factor is the defendant's assertion of his right to a speedy trial. "Whether and how a defendant asserts his right is closely related to the other factors we have mentioned." *Barker v Wingo*, 407 US 514, 531; 92 S Ct 2182; 33 L Ed2d 101 (1972). This factor "is entitled to strong evidentiary weight" because "[t]he more serious the deprivation, the more likely a defendant is to complain." *Id.* Defendant asserted his right to a speedy trial days after his arrest when defense counsel filed his appearance, but he did not make any subsequent requests.[5] At no point prior to this appeal did defendant suggest that his right to a speedy trial had actually been violated, which also suggests that he was not harmed by the delay.

The fourth and final factor in a speedy trial analysis is whether defendant suffered prejudice as a result of the delay. When the delay less than 18 months, like in this case, the burden is on the defendant to show prejudice. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). Prejudice to the person includes "oppressive pretrial incarceration" as well as "anxiety and concern of the accused." *Barker*, 407 US at 532. "However, anxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial." *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, 475 Mich at 264 (quotation marks and citations omitted).

Regarding prejudice to the person, defendant cites his statement at the arraignment that he would "probably" lose his job as a result of his incarceration, but this statement was made three days after his arrest, which was before he could possibly have known that it would take more than 10 months for his trial to be conducted, and it does not appear as though any additional mention of his employment status was made at subsequent hearings. Defendant also argues that he suffered prejudice to his person because he was incarcerated during the start of the COVID-19 pandemic. While there is nothing in the record to suggest that defendant actually contracted this illness, defendant argues that his risk of exposure was heightened by his incarceration, and the increased risk caused him undue anxiety. This anxiety was intensified, defendant argues, because of defendant's various underlying health conditions. However, the record includes virtually no information pertaining to defendant's health or how it could be impacted by the pandemic.

---

[4] Defendant also argues that the trial court's explanation of " 'docket congestion' as a statutorily sanctioned reason for the delay . . . runs contrary" to MCR 6.004(C)(6). That rule, however, deals with whether a defendant must be released on personal recognizance, and defendant has not explained MCR 6.004(C)'s significance to the second *Barker* factor.

[5] Defense counsel mentioned the right to a speedy trial at a February 5, 2020 hearing, but this was only a passing reference made in support of defendant's request for pretrial release.

Moreover, the pandemic struck Michigan in March 2020, and defendant's trial was conducted in April 2020. This additional pretrial anxiety lasted for only approximately one month. Regardless, as stated previously, anxiety alone is not sufficient to establish prejudice for the purposes of a speedy trial argument. *Gilmore*, 222 Mich App at 462.

Defendant further argues that the delay caused prejudice to his defense because he was not tried until the onset of the pandemic, at which time courtroom restrictions were in place that allegedly compromised his right to a public trial, to confront witnesses, and to the assistance of counsel. It would be unreasonable, however, to attribute the public health precautions in place due to COIVD-19 to the delay in conducting defendant's trial—the delay did not cause the pandemic, and the fact that the delay and start of the pandemic coincided was purely happenstance. Moreover, given that the delay in this case was less than 18-months, it was defendant's burden to establish that his defense was prejudiced, and, as the prosecution points out, defendant "has not alleged that any exculpatory evidence has been lost or destroyed, that any defense witness became unavailable as a result of the delay, does not explain how his ability to effectively cross-examine witnesses was hindered, or otherwise indicate how he was unable to present evidence that could have supported his defense." Put differently, defendant has not presented anything from which this Court can reasonably conclude that his ability to adequately prepare or present his defense was prejudiced by the delay.

In sum, of the four *Barker* factors, only the second factor supports that defendant's right to a speedy trial was violated, and that factor only minimally weighed against the prosecution. The other three *Barker* factors weighed against defendant's claim. Accordingly, balancing the four *Barker* factors, we find no violation of defendant's right to a speedy trial.

## III. WAIVER OF CONFRONTATION RIGHT

Defendant next argues that he did not execute a valid waiver of his right to confront witnesses. We disagree.

"A defendant must raise an issue in the trial court to preserve it for [this Court's] review." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Defendant did not raise this issue in the trial court and concedes that it is unpreserved. Unpreserved constitutional arguments are reviewed for plain error. *Carines*, 460 Mich at 752-753. A plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

Both the United States and Michigan constitutions protect a defendant's right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. This right generally "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact . . . ." *People v Buie*, 491 Mich 294, 304; 817 NW2d 33 (2012) (quotation marks and citation omitted). A defendant, however, can waive this right, and this waiver may be accomplished through counsel. *Id*. at 306-307. A waiver is "the intentional relinquishment or abandonment of a known right," and one who waives a right cannot then seek appellate review of a claimed deprivation of that right because the waiver extinguished any error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). In *Buie*, our Supreme Court adopted "the following rule to govern the waiver of the right of confrontation by counsel in

-4-

Michigan: if the decision constitutes reasonable trial strategy, which is presumed, the right of confrontation may be waived by defense counsel as long as the defendant does not object on the record." *Buie*, 491 Mich at 315.

In the present case, defendant and the complaining witness both testified in person, but several witnesses were allowed to testify remotely through the use of videoconferencing technology. Before trial began, defense counsel expressly consented on the record to the use of this technology for taking testimony, and defendant did not object. Defendant does not attempt to rebut the presumption that this waiver was a reasonable trial strategy, but rather argues that the rule articulated in *Buie* should be modified such that "this court should ask whether, in light of COVID-19, a defendant knowingly and voluntarily waived his right to confrontation through his attorney." This Court, however, has no authority to modify a rule handed down by the Supreme Court, see *People v Strickland*, 293 Mich App 393, 402; 810 NW2d 660 (2011) ("This Court is bound to follow decisions of our Supreme Court."), and we therefore reject defendant's invitation to do so. Defendant fails to otherwise direct this Court to evidence in the record suggesting that this waiver was involuntary or unreasonable trial strategy.[6] Accordingly, defendant has not rebutted the presumption that his counsel's waiver of defendant's right to confrontation was reasonable trial strategy, and so his argument does not warrant appellate relief.

## IV. SENTENCING

Defendant argues that his 25-year mandatory minimum sentence was excessive in violation of the Michigan Constitution's prohibition of cruel or unusual punishments. We disagree.

Defendant did not raise this issue in the trial court, so it is unpreserved. See *People v Burkett*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351882); slip op at 2. Unpreserved constitutional arguments are reviewed for plain error. *Carines*, 460 Mich at 752-753.

The United States Constitution prohibits punishments that are both cruel and unusual, US Const, Am XIII, while Michigan's Constitution prohibits punishment that is cruel *or* unusual, Const 1963, art 1, § 16. See *Harmelin v Michigan*, 501 US 957, 994-995; 111 S Ct 2680; 115 L Ed2d 836 (1991); *People v Bullock*, 440 Mich 15, 30-31; 485 NW2d 866 (1992). " 'The prohibition of punishment that is unusual but not necessarily cruel carries an implication that unusually excessive imprisonment is included in that prohibition.' " *Bullock*, 440 Mich at 31, quoting *People v Lorentzen*, 387 Mich 167, 171-172; 194 NW2d 827 (1972).

In this case, defendant's sentencing offense was AWIGBH, MCL 750.84, and he received a mandatory 25-year prison sentence as a fourth-offense habitual offender pursuant to MCL

---

[6] For instance, defendant asserts that his waiver was involuntary because "he had to choose between the videoconferencing witnesses or waiting in jail even longer for his trial to commence." Defendant does not explain why trial would have been delayed if he insisted on in-person testimony, but accepting this assertion as true, it does not render his choice to proceed with trial by videoconferencing witnesses involuntary.

-5-

769.12(1)(a). Defendant argues that this mandatory sentence as applied to him was unusually excessive in violation of the Michigan Constitution.

When assessing whether a punishment is cruel or unusual, this Court uses "a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). "Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Burkett*, ___ Mich App at ___; slip op at 3.

This Court in *Burkett* recently addressed the same constitutional argument to MCL 769.12(1)(a) that defendant raises in this case. For the first prong, the *Burkett* Court acknowledged the mandatory 25-year sentence was "a harsh punishment," but ultimately determined that the sentence was not "unduly harsh" given the gravity of the defendant's offense. *Burkett*, ___ Mich App at ___; slip op at 4. We similarly conclude that the 25-year prison sentence imposed in this case was "a harsh punishment," but not unduly harsh. Defendant threw his then girlfriend to the ground violently enough to break her leg, then climbed on top of her and began bouncing up and down on her pinned-down body, while slapping her face and holding her eyes open to look at him. This was undoubtedly an egregious crime. Moreover, defendant was previously convicted of other felonies, including second-degree home invasion, assault with a dangerous weapon, and assaulting, resisting, or obstructing a police officer causing injury. While MCL 769.12(1)(a) requires that only one of the defendant's prior offenses be a listed felony, two of these prior convictions are listed felonies under MCL 769.12(6)(a). See MCL 769.12(6)(a)(*iii*). Accord *Burkett*, ___ Mich App at ___; slip op at 4.

On appeal, defendant urges this Court to find his sentence unduly harsh because his guidelines' sentencing range was 38 to 152 months. The sentencing guidelines, however, do not always reflect the seriousness of an offense. See, e.g., *People v Houston*, 448 Mich 312, 322; 532 NW2d 508 (1995). Thus, that defendant's guidelines' range is lower than the 25-year sentence ultimately imposed does not necessarily support defendant's argument that his sentence is unduly harsh. Regardless, the 25-year sentence was not unduly harsh given the gravity of defendant's offense, as previously explained.

The second prong of the test for whether a punishment is cruel or unusual asks for a comparison between the penalty at issue and other crimes in Michigan. Defendant's primary argument for this prong is that the maximum penalty for a first offense of AWIGBH is 10 years and many of the other crimes listed as "serious crimes" in MCL 769.12(6)(c) carry maximum penalties of 15 years for a first offense. However, assault with intent to maim, MCL 750.86; mayhem, MCL 750.397; and assault with intent to commit criminal sexual conduct involving sexual penetration, MCL 750.520g(1), are also punishable by a maximum of 10 years' imprisonment, and MCL 769.12(6)(c) lists them as serious crimes subject to a 25-year mandatory minimum sentence. Defendant also compares his 25-year minimum sentence to the guidelines' ranges for more serious offenses scored to reflect his same prior-record-variable and offense-variable scores, but defendant has not cited any caselaw to support that this type of comparison is

an appropriate basis on which to conclude that the penalty imposed for defendant's crime was unusual when compared to the penalties for other Michigan crimes. Indeed, such a comparison seems ill-suited for present purposes because the legislative sentencing guidelines reflect only advisory sentences, see *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), not penalties for other crimes.

The final prong involves a comparison of Michigan's penalty to the penalty imposed for the same offense in other states. Defendant concedes that Michigan's penalty is less severe than those allowed under California's "three strikes" law, which was upheld by the United States Supreme Court in *Ewing v California*, 538 US 11; 123 S Ct 1179; 155 L Ed 2d 108 (2003), but defendant attempts to distinguish California's provision. However, the defendant in *Burkett* attempted to make the same distinction, and this Court was unpersuaded. *Burkett*, ___ Mich App at ___; slip op at 5. Defendant also compares his sentence to penalties for what he believes are similar offenses in Indiana, Kansas, and Florida.

In Indiana, a defendant sentenced as a habitual offender for a conviction of an offense equivalent to defendant's—a level 5 felony battery—would face a fixed prison term as short at three years and as long as 12 years. Ind Code §§ 35-50-2-8, 35-42-2-1.[7] For Kansas, defendant argues that his conviction is equivalent to a conviction for aggravated battery under Kan Stat § 21-5413(b), and contends that he could only be sentenced as a habitual offender for up to 9½ years' imprisonment under Kan Stat § 21-6706. That statute, however, provides that its provisions "shall not be applicable to . . . any felony committed on or after July 1, 1993." Kan Stat § 21-6706(e)(3). Thus, that statute would not be applicable to defendant, and it is not for this Court to search out and discover which statute would be applicable to defendant. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ."). Finally, in Florida, a person with defendant's criminal history who committed the equivalent offense of aggravated battery[8] would be sentenced to serve "a term of years not exceeding 30." Fla Stat §§ 784.045(2), 775.084(4)(a).

---

[7] A defendant in Indiana is guilty of a level 5 felony battery if he or she intentionally touches another person in a rude, insolent, or angry manner and the offense results in serious bodily injury to the other person. Ind Code § 35-42-2-1(g)(1). The prosecution contends that a Michigan conviction for AWIGBH is more equivalent to a level 3 felony battery in Indiana, which is when a person "intentionally inflicts injury on a person that creates a substantial risk of death or causes: (1) serious permanent disfigurement; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) the loss of a fetus[.]" Ind Code § 35-42-2-1.5. While neither Indiana offense is particularly analogous to Michigan's AWIGBH, we believe that the offense cited by defendant is the better comparison.

[8] A defendant in Florida is guilty of aggravated battery if he or she, in committing a battery, intentionally causes great bodily harm. Fla Stat § 784.045(1)(a). Defendant, however, contends that his Michigan conviction for AWIGBH is equivalent to a Florida conviction for aggravated assault, which is an assault with a deadly weapon without intent to kill or assault with an intent to

Based on the foregoing, defendant has indeed demonstrated that there is at least one state in which the penalty for his crime would be less severe. However, in the other state that defendant provided current law for, the penalty for his crime could be more severe. Therefore, the third factor, like factors one and two, does not support defendant's position. Moreover, defendant has failed to articulate any unique circumstances which would overcome the presumption that the statutorily enhanced sentence is proportionate to the offense. We therefore conclude that defendant has failed to establish that his mandatory minimum sentence was unconstitutional.

Affirmed.

/s/ Anica Letica
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

---

commit a felony. Fla Stat § 784.021. We agree with the prosecution that Michigan's AWIGBH is more comparable to Florida's aggravated battery, not aggravated assault.