*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

NOSAKHARE ONUMONU,

Defendant-Appellee.

UNPUBLISHED
June 18, 2026
2:39 PM

No. 373936
Wayne Circuit Court
LC No. 12-000687-01-FH

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted[1] the trial court's order granting defendant's motion for relief from judgment. We reverse.

## I. FACTUAL BACKGROUND

We previously issued two opinions concerning defendant: *People v Onumonu*, unpublished per curiam opinion of the Court of Appeals, issued July 13, 2017 (Docket No. 329100) (*Onumonu I*), and *People v Onumonu*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2024 (Docket No. 363065) (*Onumonu II*). In *Onumonu I*, we summarized the underlying facts of the case as follows:

> Defendant was convicted of murdering 84-year-old Helen Klocek on March 2, 1999. Klocek ate breakfast at the Three Brothers Restaurant in the "three corners" area of Canton, Plymouth, and Westland around 11:00 a.m. on March 2. After finishing her meal, she left the restaurant alone. Klocek's body was discovered after 9:00 p.m. that night, in an alley behind a church on Joy Road in Detroit. The medical examiner determined that the causes of death were strangulation and blunt force trauma to her head, neck, and chest areas, which was

---

[1] *People v Onumonu*, unpublished order of the Court of Appeals, entered April 28, 2025 (Docket No. 373936).

-1-

likely inflicted by the killer stomping on her body. Klocek's white Ford Escort was discovered in the parking lot of Arbor, Inc., two blocks away from the location where her body was found. The driver's seat had been intentionally set on fire. The police found a Kevlar glove in the back seat of the Escort.

Gwendolyn Gardner learned of Klocek's death from a television news broadcast. Gardner notified the Detroit police that she thought she saw Klocek in her vehicle with a black male on March 2, 1999, at approximately 1:30 p.m. Gardner reported seeing a small white vehicle driving very slowly on Joy Road. The driver of the vehicle was an elderly white woman. The male occupant appeared to be pointing and giving the woman directions on where to drive. The police composed a computer-generated sketch of the suspect based on Gardner's description. Before the sketch was composed, Gardner was shown a different composite sketch of a suspect in a series of purse snatchings in Plymouth. Gardner stated that the man she saw in Klocek's vehicle resembled the Plymouth sketch.

Klocek's homicide remained unsolved until 2011, when the Detroit Police received funding to investigate cold cases. The Kevlar glove was submitted for DNA analysis and comparison of the evidence to the CODIS[2] database. Three areas of the glove's lining contained DNA that matched defendant's DNA profile. In November 2011, defendant was charged with alternative counts of first-degree premeditated murder, first-degree felony-murder, and receiving or concealing stolen property (RCSP), MCL 750.535. [*Onumonu I*, unpub op at 1-2.]

Defendant was convicted by a jury in July 2015 and sentenced to life in prison. Defendant appealed by right to this court. He also moved for a new trial in the trial court. His motion and appeal included claims of ineffective assistance of counsel, including an argument that trial counsel was ineffective in failing to pursue strategies related to police consideration of other suspects and the chain of custody of the Kevlar glove. The trial court denied his motion. This Court thereafter affirmed his convictions.

In July 2019, defendant moved for relief from judgment and a new trial on grounds of newly-discovered evidence and fraud upon the court. Defendant stated that he submitted a request under the Michigan Freedom of Information Act (FOIA), MCL 15.231 *et seq*., and obtained a document supporting his allegation of fraud upon the court by Detective Bruce Christnagel. Detective Christnagel submitted a request for a search warrant to obtain a buccal swab or blood sample from defendant. He stated in the accompanying affidavit that DNA taken from "the glove from the homicide scene" matched defendant's DNA profile on CODIS. Defendant stated that Detective Christnagel made a false statement regarding the collection of a green cloth and a work glove taken from Klocek's vehicle. The motion is not clearly written, but it appears that defendant alleged that the officers falsely represented the location where the glove was found in order to mislead the jury into associating the glove with the homicide.

---

[2] CODIS is "an acronym for 'Combined DNA Indexing System.'" *People v Buie*, 491 Mich 294, 298; 817 NW2d 33 (2012).

Defendant also alleged that the prosecutor violated its duty to disclose exculpatory evidence under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In 2018, defendant's appellate counsel submitted a FOIA request. He claimed that mugshot photos of two alternative suspects, progress notes, and interoffice memorandums received in response to that FOIA request would have helped him plan a defense.

In 2024, defendant obtained an affidavit from retired Detroit Police Sergeant Henry Ellis about the glove. After Sergeant Ellis reviewed defense counsel's file, he claimed that if law enforcement had identified a suspect and had access to that suspect's DNA, it would have been the "procedure to immediately submit the [suspect's] DNA together with the glove to the lab." If that was not done earlier, he opined that either there was no suspect identified or there was no glove to test at that time. Sergeant Ellis also noted that he had a discussion with defense counsel that the glove was not mentioned in any reports prior to 2010. Sergeant Ellis claimed that "[t]he fact that the glove was not DNA tested until 2011 establishes that either A) the glove, or (B) a suspect's DNA, or C) both, did not exist before then." Sergeant Ellis opined "that perhaps: A) the report was written in 2010; or B) the glove was not found until 2010." Lastly, Sergeant Ellis stated that an affidavit signed by Detective Christnagel in July 2011 incorrectly stated that "the glove was found at the homicide scene, which was at the rear of 18216 Joy Road," but "the glove was really found in the victim's vehicle on March 4, 1999, in the parking lot of Bushnell Congregational Church" on the Southfield Service Drive.

Sergeant David Babcock's trial testimony refuted these assertions. Sergeant Babcock, a 45-year police veteran who then served as the evidence technician for the Detroit Police Department Crime Scene Services unit, conducted the inventory search of the burnt car in this matter on March 8, 1999. Regarding the glove recovered in the vehicle's back seat, he explained:

> It's a, I've never seen a glove like this before and it's very interesting I've not seen one since. I don't know what kind of a glove this is. It's a unique glove for some kind of business or industrial use possibly. It had a label on it. It's called an Atlas, and I don't no [sic] if F-I-T stands for or if it's a model number and with a letter L. It's a glove that has cloth and a lot of flexible rubber attached to it.

Sergeant Babcock stated the glove smelled of gasoline, suggesting that it was worn by the person who attempted to torch the vehicle. His testimony establishes that the glove was discovered before the date identified in Sergeant Ellis's affidavit, which defendant recently offered in support of his latest attempt to set aside his convictions.

Defendant also stated that, at trial, the prosecution's "major piece of evidence" was a copy of defendant's W-2 tax form obtained from PDC Glass, where defendant had been employed at one point. Defendant explained that the W-2 and his employment history were used to prove that he was in proximity to the homicide location the day that Klocek was murdered. But in 2018, defendant's father obtained a copy of defendant's Social Security earnings, which showed that defendant worked for two other companies in addition to PDC in 1999. Defendant stated that the prosecutor should have used its own resources to further investigate defendant's employment. He reasoned that, had the prosecutor done so, the investigation would have revealed that defendant was not working for PDC in March 1999.

In *Onumonu II*, we summarized the complex procedural history that followed defendant's motion for relief from judgment and for a new trial. Briefly stated, the trial court made oral findings suggesting that defendant had established that he was entitled to a new trial. *Id*., unpub op at 2. However, when the order was entered, the court checked "granted" on the printed part of the order and handwrote the following statement: "Evidentiary Hearing on whether to grant new trial February 15, 2022, at 10:00 A.M." *Id*., unpub op at 3. After entering the order, the trial court judge was placed on administrative leave. *Id*. The case was transferred to a new judge, who expressed concern about the inconsistency. *Id*. Ultimately, the court decided that it would be necessary to hold an evidentiary hearing to determine defendant's entitlement to relief. *Id*. On appeal, this Court affirmed that order. *Id*., unpub op at 6.

Defendant and Sergeant Ellis were the only witnesses at the evidentiary hearing. The court found that the prosecutor suppressed evidence regarding other suspects, leaving defendant unable to raise issues related to those suspects. The court applied the four-part test from *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003), and concluded that defendant was unable to find the evidence regarding alternative suspects with due diligence. The court also concluded that the document was "replete with information that Mr. Onumonu could have used to impeach" Sergeant Ellis and possibly other officers. Regarding defendant's employment, the court found:

> APA Reynolds resorted to what he referred to as simple math in determining from [defendant]'s W2 how much he made, how much—and oh, he did some calculations to determine based on how much money he made off all of that W2 as to where he would've been working based on how long he would've had to work to make a certain amount of money. I'm probably not describing it well. It makes sense on paper.
>
> The problem is that he didn't have to resort to calculating those numbers and speculating about whether [defendant] worked there at the time in question because it is the People's responsibility to investigate. And they simply could have determined where [defendant] worked by using that same information to track where he was working at the time.

The court concluded that evidence of defendant's employment with PDC Glass bolstered the prosecution's circumstantial evidence because it further established the link between defendant and the glove. For these reasons, the court granted defendant's motion for a new trial. This appeal followed.

## II. ANALYSIS

The prosecution contends on appeal that the trial court abused its discretion by granting defendant's motion for relief from judgment where defendant failed to satisfy the requirements necessary to establish entitlement to relief under MCR 6.508(D). We agree.

We review the trial court's ruling on a motion for relief from judgment for an abuse of discretion. *People v Spears*, 346 Mich App 494, 502; 13 NW3d 20 (2023). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *Id*. (quotation marks and citations omitted). We review the trial court's

factual findings for clear error. *Cress*, 468 Mich at 691. "[A] trial court's findings of fact are clearly erroneous if, after a review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made." *Spears*, 346 Mich App at 502 (quotation marks and citation omitted; alteration in original). We review issues of constitutional law, including whether the prosecution committed a *Brady* violation, de novo. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016).

Subchapter 6.500 governs review of criminal convictions not subject to appellate review by this Court and the Supreme Court. MCR 6.501. "The request for relief under this subchapter must be in the form of a motion to set aside or modify the judgment." MCR 6.502(A). A defendant bringing a motion for relief from judgment must show "good cause for failure to raise such grounds on appeal . . . ." MCR 6.508(D)(3)(a). "One way to establish good cause is by showing that an external factor prevented appellate counsel from raising an issue on direct appeal." *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022). However, "[t]he court may waive the 'good cause' requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime." MCR 6.508(D).

After a defendant establishes good cause, they must also demonstrate "actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3)(b). To show "actual prejudice" in the context of a motion for relief from judgment, the defendant must show that, "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal[.]" MCR 6.508(D)(3)(b)(*i*)(A). "Alternatively, a defendant can show actual prejudice where there is an 'irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case[.]' " *Christian*, 502 Mich at 75, quoting MCR 6.508(D)(3)(b)(*iii*).

Defendant's motion for relief from judgment rests on two related, but separate, grounds for relief: that the prosecutor failed to disclose exculpatory evidence in violation of *Brady*, 373 US 83, and that defendant discovered new material evidence as established in *Cress*, 468 Mich 678. "To establish a *Brady* violation, a defendant must show that: '(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material.' " *Christian*, 510 Mich at 76, quoting *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). By contrast, under *Cress*, 468 Mich at 692, a defendant seeking a new trial on grounds of newly discovered evidence must show that:

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [Quotation marks and citation omitted.]

The good-cause exception of MCR 6.508(D)(3)(a) and the required elements of a *Cress* claim are similar in that both require defendant to demonstrate that he did not know that the police considered other suspects before discovering that DNA from the glove found at the crime scene matched defendant's CODIS profile. The external factor method for proving good cause, see *Christian*, 502 Mich at 75, and the "reasonable diligence" requirement under *Cress* require defendant to explain *why* he did not discover this evidence.

At the hearing on defendant's motion for a new trial, the trial court read a portion of MCR 6.508(D) aloud, stating:

> That the motion alleges grounds for relief other than jurisdictional defects which could have been raised on appeal from the conviction and sentence or in [a] prior motion under this subchapter unless the defendant demonstrates the close an actual prejudice [sic].

The court omitted the "good-cause" requirement and skipped ahead to "actual prejudice." That said, the court indirectly addressed good cause by stating:

> In this particular case [defendant] is alleging suppression of evidence. And that suppression is what resulted in the evidence—which I'll get to in a moment— as being only discovered later on. Years later actually. So he could not have raised this on appea[l] because he didn't know about it. And he didn't know about it . . . based on his position [that] the evidence [was] suppressed.

The trial court concluded that the evidence defendant submitted as "newly discovered" satisfied the good-cause requirement for avoiding exclusion from relief under MCR 6.508(D)(3). If the court's finding on that point was correct, it would satisfy the first element of defendant's *Brady* claim. *Christian*, 510 Mich at 76. Equally, it would support defendant's argument that he "could not, using reasonable diligence, have discovered and produced the evidence at trial" under *Cress*, 468 Mich at 692.

Even so, the trial court's finding *was* clearly erroneous. First, defendant has consistently maintained that the information he obtained through the FOIA request regarding the police's knowledge of alternative suspects qualified as newly discovered evidence sufficient to avoid the restrictions against bringing a motion for relief from judgment under MCR 6.508(D). But ample record evidence suggests that defendant knew about the alternative suspects before he received the FOIA evidence. For instance, in *Onumonu I*, defendant made claims of ineffective assistance related to trial counsel's failure to present evidence about the same alternative suspects at issue here. He did not, at that point, claim that the prosecution had withheld information about those alternative suspects or that he had not discovered them until after trial had concluded. Thus the FOIA evidence does not qualify as newly discovered evidence under MCR 6.508(D) or *Cress*, nor is defendant able to establish that it constitutes a *Brady* violation. The trial court's conclusion to the contrary is not supported by the record.

Defendant also argued that Sergeant Ellis's affidavit proved that he lied about the reasons for not testing the glove for DNA until 2011. Sergeant Ellis testified that he did not submit the glove for testing earlier because there was no suspect for DNA comparison. However, he also testified that on March 30, 1999, he submitted a rape kit and fingernail clippings for DNA testing. Defendant thus had grounds for questioning the legitimacy of Sergeant Ellis's explanation. Again, defendant's previous claim of ineffective assistance belies his current argument that the evidence was newly discovered. On direct appeal, defendant argued that trial counsel "was ineffective for failing to cross-examine witnesses regarding irregularities in the documentation for the Kevlar glove obtained from Klocek's vehicle." *Onumonu I*, unpub op at 12. Defendant asserted "that there was actually no glove discovered with Ms. Klocek's vehicle in March of 1999[.]" *Id.*

(quotation marks omitted). Defendant emphasizes that Sergeant Ellis stated that the glove was not mentioned in any report before March 8, 2010. However, Sergeant Ellis's statement is inaccurate. The glove is listed in an evidence technician report, dated March 8, 1999. Furthermore, Sergeant Babcock, who processed the evidence here, testified that he discovered the glove during his inventory search of the vehicle at issue. In sum, Sergeant Ellis's affidavit does not establish any doubts or inaccuracies that were undetectable at the time of trial; indeed, defendant appears to have been aware of them all. The trial court thus erred in finding that defendant discovered new evidence that he could not have discovered at the time of trial.

Finally, the trial court erred in finding that evidence of defendant's employment was newly discovered evidence or evidence that should have been disclosed under *Brady*, 373 US 83. Evidence that defendant worked for PDC Glass in 1999 was significant because it associated him with the glove, which was the same type of glove used by PDC Glass employees, and because of PDC Glass's proximity to the relevant locations in the homicide. Defendant had knowledge of his own employment history. Moreover, defendant's supposedly new employment evidence does not disprove that he worked for PDC in March 1999; it proves only that he had other employers.

The trial court also erred in finding that defendant established actual prejudice under MCR 6.508(D)(3). The record does not support defendant's contention that the alternative suspects were strong suspects. We observe that one of the alternate suspects' mugshot photographs is of a white male, but the eyewitness observed a black male in the vehicle with Klocek. As to the second alternative suspect, in his motion for a new trial, defendant produced a statement by a witness who saw the composite sketch on television and reported that it resembled an acquaintance with a history of criminal behavior. This witness had no actual information linking the suspect to the homicide. Further, although defendant states in his response brief that the prosecutor "suppressed" the other suspects' DNA profiles, there is no evidence that the prosecutor interfered with any records regarding their profiles. June 2003 progress notes indicate that one suspect's DNA profile was in CODIS. This suggests that DNA comparison ruled him out as a suspect because there was no CODIS match with him in 2011. In sum, while the evidence against defendant includes a DNA match with the glove left in the victim's car, the only evidence against the other suspects is that other persons opined that they had a propensity to commit a crime such as that perpetrated against Klocek.

III. CONCLUSION

Contrary to the trial court's ruling, defendant did not offer any newly discovered evidence sufficient to warrant granting his motion for relief from judgment under MCR 6.508(D).

Reversed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick